THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* M. L. JENKINS, a/k/a FURMAN JOHNSON, Defendant-Appellant.

(No. 53453;

First District—February 5, 1971.

50

Gerald W. Getty, Public Defender of Chicago, (Stuart B. Scudder and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, (Robert A. Novelle, Paul P. Bievel, Jr., and John Michael Ryan, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was convicted, after a jury trial, of the crime of murder. Judgment was entered and he was sentenced to a term of one hundred to one hundred and fifty years. Defendant's sole contention on appeal is that the trial court erred in denying his motion to suppress a pre-trial statement obtained in violation of his constitutional rights.

The evidence at the trial may be briefly summarized. The State's first witness, Denise Keeber, testified that she observed the defendant drag the deceased by the hair out of a tavern down the sidewalk, kick her about the head, and hit her in the head with his fist. She further testified that she saw the defendant take a knife from his trousers and stab the deceased, after which he proceeded down an adjoining alley. A policeman who had been in the tavern then came out and ran after the defendant.

Annebel Johnson, a defense witness, testified that she observed the defendant strike the deceased in the stomach, push her out of the tavern and take from his person what appeared to her to be a knife.

The arresting officer, Officer Gary, testified that while off duty and in plain clothes he observed the defendant push the deceased out of the tavern. Shortly thereafter someone ran into the tavern and said, "He just killed her," whereupon Officer Gary went into the street, saw the victim lying on the sidewalk bleeding, asked, "Which way did he go?" and pursued the defendant down the alley. The defendant stopped on request and surrendered a knife when asked to do so by the officer. Officer Gary further testified that on being given the knife he placed the defendant under arrest and said, "You just killed a woman"; that then defendant stated, "The bitch needed killing."

The defendant testified that he "carried" the deceased to the tavern door by grabbing the collar of her coat and her arm. When he grabbed

the deceased he stated he slapped and beat her while inside the tavern. He further testified that the death occurred as the result of the tavern door, opened by him as he held the deceased, driving the knife into her.

The jury found the defendant guilty of murder. The trial court upon hearing in aggravation that the defendant had previously been convicted of murder in 1947, and of manslaughter in 1960 as well as prison escape and parole violations, sentenced the defendant to one hundred to one hundred and fifty years.

*Opinion*

Defendant contends that the trial court erred in denying his motion to suppress a pre-trial statement he made to the arresting officer. He argues that this statement was obtained in violation of his constitutional rights. At the hearing on the motion to suppress, Officer Gary testified that he witnessed an argument between the defendant and the deceased at a tavern. Shortly thereafter he was told by a bystander that a woman had been killed and that the man who did it was in a nearby alley. He went outside and over to the alley, called for the defendant to halt and identified himself as a police officer. Gary then testified: "I asked Mr. Jenkins for his knife, and he handed it to me from under his coat and he stated he had just killed a woman, and he stated, 'The bitch needed killing.'"

On redirect examination Officer Gary testified that:

"First of all, when I approached him and asked him, 'What did you do with the knife?' and he handed me the knife, this is the time I placed him under arrest. It was after that that I stated, 'You just killed a woman back there.'"

Twice during the hearing the trial judge asked Officer Gary about defendant's statement:

"THE COURT: Q. Officer, where had you been prior to the time you saw this lady on the sidewalk?

A. I'd been in the tavern.

Q. You'd been in the tavern. Now, what was the first thing you said to this defendant?

A. The first thing I said to him was, 'Don't you know you just killed a woman back there?'

\* \* \*

THE COURT: When you put him under arrest, when you got the knife, what followed?

THE WITNESS: That was when I stated that you just killed a woman back there, and he said, 'The bitch needed killing.' So we went back to the alley, back to the street, and he said, 'I give no police officer no trouble.' And after that I said, 'No more, Mr. Jenkins.'"

The trial court denied defendant's motion to suppress. In denying the motion the judge stated:

"THE COURT: I'm going to deny the motion. I think it all follows. I can see the State's position here now, I didn't see it before: that this was part and parcel of the arrest; that he was telling him why he was arresting him, and he turns around and he volunteers a statement here.

THE COURT: He didn't have to make a statement. He placed him under arrest. He said, 'You're under arrest, you just killed a woman,' and that's when he volunteers and makes a spontaneous statement here."

Defendant cites *Miranda v. Arizona* (1966), 384 U.S. 436; *Orozco v. Texas* (1969), 394 U.S. 324; and *State v. Intogna,* 101 Ariz. 275, in support of his contention. In *Miranda* the defendant was questioned for several hours, denied the assistance of counsel, and interrogated in a police station. In *Orozco* four police officers entered defendant's bedroom and began questioning him about a shooting which had occurred some hours before. Defendant then made several incriminating statements without first being advised of his constitutional rights. In *Intogna* the arresting police officer had his gun drawn and was within three feet of the defendant when the defendant made an incriminating statement in response to questioning by the officer.

In the instant case Officer Gary testified in response to questioning by defense counsel and the trial court that he asked the defendant no questions. After he placed the defendant under arrest, Gary stated that "you just killed a woman back there," and he [defendant] said, "The bitch needed killing." The trial court found that the police officer's remark was an explanation to the defendant of the reason for the arrest. and that thereafter defendant voluntarily and spontaneously made the statement that "The bitch needed killing."

In *In re Orr,* 38 Ill.2d 417, the defendant, a sixteen year old boy, had been arrested, handcuffed and placed in a squad car when he told the police officers that he wanted to tell what had happened to lead to the fatal shooting. He then related what had occurred. Defendant was not advised prior to making his oral statement that he had the right to remain silent. One of the arresting officers testified that the statement was not preceded by any questioning. In affirming defendant's conviction the court at page 423 stated:

"[I]n our opinion, it is clear that the use in evidence of the statement of respondent was not proscribed by *Miranda.* That case requires that 'a person  *  *  *  taken into custody or otherwise deprived of his freedom of action in any significant way  *  *  *, [p]rior to any ques-

tioning, * * * be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' (384 U.S. at 444, 16 L.Ed.2d at 706, 86 S.Ct. 1602.) While Officer Sherry admitted that respondent was not advised of his right to remain silent prior to giving his oral statement, he also asserted, without contradiction, that no questioning preceded it. It is therefore apparent that the issue here is not the necessity of a warning prior to questioning, but its necessity before a spontaneous declaration may be received in evidence. Although we have not heretofore considered this question, our research discloses several cases in which other courts have done so. All agree that *Miranda* does not require police to interrupt a suspect in the process of making a spontaneous statement in order to warn him of his constitutional rights, and that a statement made in the absence of any questioning is not inadmissible by virtue of the failure to give such warning. (*Ballay v. People,* (Colo.) 419 P.2d 446, 449; *United States v. Cruz,* (W.D. Tex.) 265, F.Supp. 15, 20; *Diaz v. United States,* (E. D. La), 264 F.Supp. 937, 945; *People v. Jones,* (D.C.A.), 52 Cal. Rptr. 924, 926; see also *State v. Hymore,* 9 Ohio St.2d 122, 224 N.E.2d 126, 129.) In our opinion, these decisions are correct."

■■ In the instant case we believe that Officer Gary's remark made to the defendant upon his arrest was merely explanatory, and that defendant's statement made immediately thereafter was spontaneous and voluntary and is not inadmissible by the failure to advise defendant of his constitutional rights. We find that the trial court did not err in denying defendant's motion to suppress.

We note that in his brief defendant argues that his alleged admission to Officer Gary was submitted to the jury over his objection. We have carefully reviewed that portion of the record concerning Officer Gary's testimony at trial. We have found that no objection was made to the introduction into evidence of defendant's statement.

■■ The failure to make a proper and timely objection to the admission of evidence, or to move to strike it out after its admission, constitutes a waiver of the right to argue this point for the first time on appeal. *People v. Trefonas,* 9 Ill.2d 92, and *People v. Payton,* 124 Ill.App.2d 78.

The judgment is affirmed.

Judgment affirmed.

ENGLISH, P. J., and LORENZ, J., concur.