## 29891. SHY v. THE STATE.

INGRAM, Justice.

Appellant Thomas A. Shy was convicted, after a jury trial in Fulton County Superior Court, of the murder of his wife, Catherine Shy, and of the aggravated assault of Anthony Coley. Appellant was sentenced to life imprisonment for the murder and also received a concurrent 10-year sentence for the aggravated assault. This appeal was filed after appellant's motion for a new trial was denied in the trial court. We find no reversible error for any reason enumerated in this appeal.

Appellant's wife and Anthony Coley were seated in the latter's automobile in a parking lot at the corner of Bankhead and Law Streets in the City of Atlanta. They had been talking for a short time when the appellant, Thomas Shy, drove up to the location. According to Coley's testimony, appellant pulled out a gun and after a short discussion fired some shots in their direction. He then reached into his wife's jacket and took her gun. He kept both guns pointed at Coley and his wife while they discussed the situation for about an hour.

A police officer drove up around 1:50 a.m. to investigate the parked cars and saw appellant kneeling or squatting beside the passenger side of the car where his wife was seated. Mrs. Shy told the officer that nothing was wrong and he left. Coley contends that he and Mrs. Shy both were frightened and that they lied to the officer.

The witness Coley further testifed that ap-

proximately 45 minutes later he noticed that he had been shot from the earlier fracas and Mrs. Shy began scuffling with her husband. Appellant fired both guns into the car whereupon Coley opened the car door on his side and rolled underneath the car. Appellant then walked around to the driver's side and fired several more shots. At this same time, another officer of the Atlanta Police Department was on patrol and he noticed the cars in the parking lot. The officer heard what he thought was gunfire and he saw appellant standing beside Coley's car and saw appellant fire into the car.

The officer drove his car closer, got out of it, drew his revolver and ordered appellant to drop his gun. Appellant, after a pause, laid it down and the officer ordered him to spread-eagle himself on the ground. While on the ground the officer straddled appellant and began to frisk him but did not state that appellant was under arrest. The officer asked what was going on and appellant said, "I caught my wife and that son of a bitch and I shot him."

About this time, the officer noticed some movement under Coley's car and ordered whoever was under there to come out or to be shot. Coley replied that he had been shot. Another officer then arrived and appellant was handcuffed and taken to the patrol car. Coley was helped from under his car and an ambulance was called. Coley refused to make any statements before consulting with his attorney. Only then did the officer go to Coley's car and discover appellant's wife, Mrs. Shy, who had been fatally wounded. After appellant had been taken to the patrol car, he was advised of his Miranda rights. Appellant's version of the incident differs from that of the witness Coley. Appellant claims that he had only one gun which he drew and fired only in self-defense after Coley fired a gun at him and appellant's wife.

During the closing argument of the defense, Mrs. Shy's sister became visibly upset. Again during the state's closing argument, the victim's mother cried out that appellant had "killed her for what she had" and the sister fell to the floor. The defense moved for a mistrial and it was denied. The trial judge instructed the jury to disregard the outburst and to eradicate it from their minds.

During the state's closing argument the prosecutor made two additional statements which defendant contends were prejudicial to him and require a new trial. These statements are: (1) "Now it's all right for Mr. Shy to exercise his constitutional rights to talk to an attorney but not for Mr. Coley. What about that? You heard Detective Scappaticcio testify that after Shy was taken down and booked, advised of his constitutional rights, he asked for his attorney. No we shouldn't discuss that." (2) "Now, if the defendant is telling the truth how is it that Coley had her pistol, because you see Shy said that as Catherine started back to the car and opened the door, Coley just started shooting. What was he doing with her pistol? You don't believe that for a minute. You are reasonable. That's an out and out lie, I submit to you from the evidence of the other witnesses."

Appellant urges three grounds as error requiring a new trial. The first is that the trial court erred in allowing into evidence the alleged admission of appellant to the police officer because it was taken in violation of appellant's right to be advised of his right to remain silent and his right to counsel under Miranda v. Arizona, 384 U. S. 436.

Secondly, appellant contends the trial court failed to eradicate the prejudice to appellant that arose from the outbursts of the victim's relatives and that defendant was thereby denied a fair and impartial trial by jury.

Finally, appellant contends the remarks made in closing argument by the prosecutor were prejudicial to the appellant and were in violation of the Fifth and Fourteenth Amendments to the U. S. Constitution. We deal with each of these three contentions seriatim in this opinion.

I.

Appellant's Statement to the Police Officer.

The police officer who first came upon the scene was called to testify by the state. The trial court held a Jackson-Denno hearing (Jackson v. Denno, 378 U. S. 368) to determine whether or not the statement made by the defendant was admissible under Miranda, supra.

The trial judge ruled that appellant's statement was admissible as part of the on-the-scene investigation which

was reasonable in order to protect the officer. The defense takes the position that the officer had witnessed the offense of discharging a firearm occur and therefore had sufficient information to arrest the defendant at that point. For this reason, the defense contends that Miranda warnings were immediately required and that it was error not to give them.

The issue to be decided is whether or not the appellant was "in custody or otherwise deprived of his freedom of action in any significant way" in order to trigger the requirement that Miranda warnings be given. Some restraint on individual freedom is clearly permissible without the warnings. In the context of Miranda, custody is not defined as "any" deprivation of freedom, but rather as a "significant" deprivation of freedom. See Smith, The Threshold Question in Applying Miranda: What Constitutes Custodial Interrogation. 25 S. C. L. Rev. 699, 706 (1974).

However, the Miranda requirement for warnings is not limited to station-house interrogation. Orozco v. Texas, 394 U. S. 324 (1969). The defendant in Orozco, when interrogated by the police, was not "free to go where he pleased but was under arrest." Is the test of "Custody" that triggers the Miranda admonitions simply that the defendant is not "free to go" or is more required to make the warnings necessary?

Some courts have defined custody in terms of whether the defendant was deprived of his freedom of action. See People v. Arnold, 66 Cal. 2d 438 (426 P2d 515). We think a more reasonable test recognizes this as a factor to be considered, but also recognizes the possibility of a more limited type of detention in which the defendant is not "free to go" but the Miranda warnings are not required at the initial contact. See United States v. Coates, 495 F2d 160 (D.C. Cir. 1974).

Illustrative of this limited detention situation are the Terry-type investigative detentions, which are not equivalent to "custody," and also the on-the-scene investigations in which a police officer prevents anyone present from leaving before a preliminary investigation is made. Both are recognized, at least implicitly, in Miranda and, of course, in Terry v. Ohio, 392 U. S. 1.

The Supreme Court has not clearly defined the bounds of constitutionally permissible police investigative techniques. Miranda, by its own terms, does not apply to "general on-the-scene investigation." The police on the scene of a crime are likely to detain temporarily anyone who tries to leave before a preliminary investigation. See, Allen v. United States, 390 F2d 476 (D.C. Cir. 1968); see, also, Arnold v. United States, 382 F2d 4 (9th Cir. 1967).

Because of the diversity of street encounters between police and citizens, the courts are left with a case-by-case determination of whether constitutional rights have been violated by police activity. In Terry investigative detentions, the citizen is detained, but Miranda does not always attach to these circumstances. In Terry, there is an indication that some inquiry is permissible. The court's holding recognizes that a police officer in the course of investigating unusual behavior can make reasonable inquiries to dispel his reasonable fears for his own safety and that of others. 392 U. S. 30. In Sibron v. New York, 392 U. S. 40 (1968), and its companion case, Peters was asked what he was doing in an apartment building. When the answer given was not satisfactory to the officer, a pat-down was begun that led to the discovery of burglary tools. As a noted writer points out, in the street encounter the suspect either gives an explanation that satisfies the officer or adds to the officer's suspicion and leads to the suspect's arrest. See W. LaFave, Street Encounters and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich. L. Rev. 40 (1968).

In Georgia, both the Terry-type detention and the general on-the-scene investigation have been recognized. Appellant relies heavily on *Conoly v. Imperial Tobacco Co.,* 63 Ga. App. 880, 885 (12 SE2d 398) (1940), a false imprisonment case in which arrest is defined as "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act indicating an intention to take such person into custody, and which subjects such person to the actual control and will of the person making the arrest." This definition is implicitly approved in *Davidson v. State,* 125 Ga. App. 502, 504 (188 SE2d 124) (1972).

However, this court subsequently, in *Brisbane v. State,* 233 Ga. 339, 343 (211 SE2d 294), recognized the possibility of a Terry-type search in Georgia where there are some "reasonable articulable grounds for suspicion." See also, *State v. Swift,* 232 Ga. 535 (207 SE2d 459) (1974). In *Brisbane,* a limited investigative inquiry was found to be justified. In Terry custody cases, the individual becomes subjected to a limited investigative detention caused by the officer's reasonably founded suspicion of the individual's activities. The earlier *Conoly* decision, defining arrest in a damage suit, had no occasion to consider these factors and is not controlling here.

In *Wilburn v. State,* 230 Ga. 675 (198 SE2d 857) (1973), the defendant was convicted of murder in the shooting death of his wife. Police officers were summoned to the defendant's home and they found the defendant sleeping in the front seat of his car. There were bloodstains on the dashboard of the car. The defendant stated to the officers he did not know where the bloodstains had come from and that he did not know where his wife was. Later, defendant spontaneously remarked that "he blew her brains out." The court in *Wilburn* relied on the fact that Miranda applies only to custodial interrogations and concluded there was no error in the admission of the defendant's statements in that case. See also, Britton v. State, 44 Wis. 2d 109 (170 NW2d 785) (1969). Similarly, where a non-suspect who was not free to leave answered "threshold inquiries" made by police executing a search warrant, the answers were found to be admissible. *Jones v. State,* 127 Ga. App. 137 (193 SE2d 38) (1972).

In making the distinction between custodial and noncustodial interrogation the U. S. Court of Appeals, 5th Circuit, has outlined several criteria: "these include probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation." Brown v. Beto, 468 F2d 1284, 1286 (5th Cir. 1972). These all point to attempts by the police to gather incriminating information. See, United States v. Mandujano, 496 F2d 1050 (5th Cir. 1974). All of these factors are significant elements to be weighed in determining the "custody" issue. Of course, the police may

not delay the arrest of a suspect or use a Terry rationale as a subterfuge to coerce the suspect into incriminating himself without the benefit of Miranda warnings. See Windsor v. United States, 389 F2d 530 (5th Cir. 1968).

Under the facts of the present case, it appears that, for all practical purposes, the appellant was in custody from the moment he was ordered by the officer to spread-eagle himself upon the ground and the officer began to search him for weapons. However, in our opinion, the single threshold inquiry of the officer as to what was happening was not an impermissible "interrogation" under Miranda.

The Court of Appeals, in *Jenkins v. State,* 123 Ga. App. 822 (182 SE2d 542) (1971, cert. den.) dealt with the definition of interrogation in connection with background and descriptive information obtained in the booking process. There the defendant, not in response to any particular question during the booking process, blurted out an admission. The court relied on Professor Kasimar's definition: "Although the question is not entirely free from doubt, it seems that . . . routine police 'questioning' not related to the investigation of the case nor designed, expected, or likely to elicit information relevant to guilt may not amount to 'custodial interrogation' within the meaning of Miranda . . ." Kasimar, Custodial Interrogation Within the Meaning of Miranda, in Criminal Law and the Constitution, pp. 358, 360 (1968) (Inst. of Continuing Legal Education).

In Owens v. United States, decided by the D. C. Court of Appeals on July 7, 1975, 17 Cr. L. 2317, it was held that an officer's question, "What are you doing here?" asked of a suspect who was apprehended at gunpoint on the roof of a store about 2:00 a.m. was not an interrogation that first required Miranda warnings. As noted by that court: "Interrogation forbidden by Miranda is not a single question at the threshold of the encounter arguably aimed at determining the nature of the situation confronting the police." We think this statement fairly characterizes the circumstances of the present case.

In another case similar to the present case, the Illinois Appellate Court found in dicta that statements made to a police officer were voluntary as opposed to being

the result of interrogation. People v. Jenkins, 13 Ill. App. 49 (268 NE2d 198) (1971). In Jenkins, an off-duty police officer saw the defendant drag the victim from a tavern. A few moments later he was told the victim had been stabbed, so he followed defendant and demanded that he stop. The officer asked where the knife was and put defendant under arrest. He then stated, "Don't you know you just killed a woman back there?" Defendant replied, "The bitch needed killing." Although the statements were admitted at the trial without objection, the court stated that the whole exchange was admissible as voluntary and spontaneous. The court noted there that what the police officer said was not interrogation but was an explanation of why he was arresting the defendant.

In summary, we believe that in the present case the police officer was not interrogating appellant for the purpose of obtaining evidence to establish appellant's guilt of a crime. In the state of confusion that apparently existed at the scene of this incident, we believe the officer was seeking to determine the nature of the situation confronting him. The single threshold inquiry he made to appellant, which evoked the statement by appellant, could easily have been directed towards ascertaining if there were any current danger to the officer or to others present at the scene. Therefore, we hold this statement by appellant was admissible in evidence despite the absence of Miranda warnings to appellant before he made the statement.

## II.
### Outbursts During Closing Argument.

Apparently, there were two outbursts during the closing arguments at trial. The first outburst is unrecorded but is acknowledged by the district attorney. The defense made no objection to it at trial and may not rely on it as a basis for reversal on appeal. See *Patton v. State,* 117 Ga. 230 (43 SE 533) (1902).

The second outburst was recorded at defense counsel's request and a motion for mistrial was made. The trial judge overruled the motion but promptly instructed the jury to disregard the outburst and to eradicate it from their minds. The defendant has a right to a fair trial free from outside demonstration and suggestions. If no

instruction is given to the jury to disregard prejudicial remarks by a person in the courtroom after the defense asks for a mistrial it is reversible error. *Glenn v. State,* 205 Ga. 32 (52 SE2d 319) (1949). However, the trial judge has discretion whether to grant the mistrial in order to preserve the defendant's right to a fair trial provided the instruction to the jury will preserve this right. See *Holland v. State,* 113 Ga. App. 843 (149 SE2d 919) (1966), and *Avery v. State,* 209 Ga. 116 (70 SE2d 716) (1952); *Hendrix v. State,* 173 Ga. 419 (160 SE 614) (1931). We find no abuse of the trial judge's discretion in this case as we conclude the timely corrective action taken was sufficient.

## III.

### Statements of the District Attorney.

We reach first the district attorney's argument to the effect that appellant lied in his testimony at the trial. Did the prosecutor exceed permissible bounds in making this argument? We think not under the facts of this case. That appellant may not have told the truth was a permissible inference from the evidence. If the jury believed the state's witnesses, they could disbelieve the defendant's testimony. Such an inference could be drawn from the evidence and did not amount to a personal opinion by the prosecutor in his jury argument. See, *Moore v. State,* 222 Ga. 748 (152 SE2d 570) (1966); *Manning v. State,* 123 Ga. App. 844 (182 SE2d 690). See, also *Broznack v. State,* 109 Ga. 514 (35 SE 123) (1899). What the law condemns is "the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence." *Floyd v. State,* 143 Ga. 286 (84 SE 971) (1915). See also *Walker v. State,* 232 Ga. 33 (205 SE2d 260) (1974). This claim of error is without merit.

The second alleged error is the reference by the prosecutor in his argument to the testimony in evidence that appellant upon being taken downtown, booked, and advised of his constitutional rights asked for an attorney. No objection was made to the introduction of this evidence at the trial. The prosecutor argued this fact to the jury in closing argument after the defense in argument first made a point of the fact that the prosecution's witness, Coley, had refused to talk to the police until he had talked

to an attorney. Defendant moved for a mistrial when the prosecutor made this argument. Appellant contends that while the testimony of the state's witness, Coley, may be impeached because of his assertion of his constitutional rights, the same rule does not apply to a defendant on trial because he is clothed with greater constitutional protection than a witness. The argument is that commenting on the defendant's insistence on his constitutional right to remain silent or to have an attorney upon being placed in custody creates an inference of the defendant's guilt in the minds of the jury.

The Supreme Court of the United States has not given definitive guidance on this precise question or the closely related constitutional issue of the use of prior silence as an inconsistency to impeach the testimony of a defendant. That court has held that a defendant who takes the stand is subject to impeachment. Raffel v. United States, 271 U. S. 494. In Harris v. New York, 401 U. S. 222 (1971) the prosecution was permitted to use an otherwise inadmissible statement to impeach the defendant's credibility. In Grunewald v. United States, 353 U. S. 391 (1957), the court found on the facts in that case that invocation of the Fifth Amendment during grand jury testimony was not probative of guilt and was not inconsistent with defendant's testimony at trial.

Relying on Grunewald and the "basic rule of evidence" that statements must be inconsistent before they can be used to impeach a witness' credibility, the court found, in United States v. Hale, — U. S. — (95 SC 2183, 45 LE2d 99), that the government failed to show any probative value in silence at the police station as impeaching later testimony at trial. However, the court declined to reach the constitutional issue. Compare an earlier Fifth Circuit case which permitted impeachment by silence up until trial where the defendant claimed a coercion defense at trial. United States v. Ramirez, 441 F2d 950 (5th Cir., 1971).

This problem most often can arise in a factual situation in which the defendant takes the stand as a witness to present either an alibi or an explanation of self-defense which he has never mentioned to the police.

The prosecutor then comments on that fact with the implication that the story was recently fabricated by the defendant. If the comments are intended to be probative of guilt, they are clearly impermissible. Gillison v. United States, 399 F2d 586 (D.C. Cir., 1968); People v. Wright, 182 Col. 87 (511 P2d 460) (1973); Commonwealth v. Stafford, 450 Pa. 252 (299 A2d 590) (1973).

Since the Supreme Court chose to base Hale on its supervisory power over lower federal courts, it is unclear how state courts that have decided the question would now decide the same issue. In Kansas, it is permissible to impeach a defendant if his silence on arrest is inconsistent with his trial testimony. State v. Bly, 215 Kan. 168 (523 P2d 397) (1974). In Virginia, however, it is error for the prosecutor to use the assertion of the privilege against self-incrimination either "to discredit or convict the person who asserted it." Reid v. Commonwealth, 213 Va. 790 (195 SE2d 866) (1973). The Michigan Supreme Court would only allow the use of silence upon arrest as impeachment of defendant's direct assertion that he did make a statement on arrest. See People v. Bobo, 390 Mich. 355 (212 NW2d 190) (1973).

We have found no case in Georgia dealing with the specific issue presented for decision here. In the present case, the defense made no objection to the evidence later argued by the prosecutor at trial and the defense repeatedly referred to the fact that the state's witness, Coley, refused to talk to anyone until he had spoken to his attorney. Under these circumstances, in our opinion, there was no inference of guilt to be drawn by the jury from defendant's earlier insistence upon an attorney. Instead, the logical inference would be that since the witness, Coley, did the same thing, it was unimportant and irrelevant to the testimony given by them at the trial. While such an argument in other circumstances by a prosecutor might cause problems of constitutional dimensions, we do not believe the facts of the present case bring it to this level of concern. Therefore, we conclude that, even if the argument objected to was erroneously permitted, it must be considered harmless under the facts of this case.

*Judgment affirmed. All the Justices concur.*

SUBMITTED APRIL 24, 1975 — DECIDED SEPTEMBER 2, 1975.

*Joe Salem,* for appellant.

*Lewis R. Slaton, District Attorney, Carole E. Wall, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.