77559. PINKSTON v. THE STATE.
(377 SE2d 864)

BANKE, Presiding Judge.

The appellant was found guilty of rape, motor vehicle theft, loitering and prowling, and two counts of burglary. He filed this appeal from the denial of his motion for new trial.

Walt Porterfield testified that his house was burglarized on the evening of April 5, 1987, and that among the items taken was an Intratec nine-millimeter Luger handgun. Porterfield's testimony that the burglary had occurred on April 5, 1987, contradicted the date alleged in the indictment, which was April 4, 1987. Porterfield testified that he discovered the burglary upon returning home from a trip to the video store. He further testified that upon leaving his residence to go to the video store approximately an hour earlier, he had observed the appellant standing on the street nearby.

The rape victim testified that she awoke at approximately 1:30 a.m. on April 5, 1987, to find a man standing beside her bed wearing a yellow stocking cap and carrying a handgun. The man ordered her to shut her eyes and do what he said, warning her that "he had a nine millimeter and that it packs a wallop." He then forced her to engage

in sexual intercourse with him. When he was finished, he took from her a "rope chain with a Nefertete on it" and drove away in her automobile. Police were summoned to the scene almost immediately; and a radio lookout was broadcast for the automobile, which was spotted shortly thereafter outside a convenience store. A chase ensued which ended when the suspect drove the automobile into a tree and fled on foot. An Intratec nine-millimeter pistol and a yellow stocking cap were recovered from inside the vehicle, and a size 8-½ Nike tennis shoe for the right foot was found on the ground a few feet away.

On April 8, 1987, an individual carrying a Georgia driver's license issued in appellant's name and bearing his photographic likeness entered a local pawn shop and pawned a gold chain with a queen head pendant. The pawn shop clerk testified that she gave the appellant a yellow receipt evidencing the transaction. The pawned items were recovered from the shop and were identified at trial by the rape victim as being the necklace and pendant the appellant had taken from her.

At approximately 1:30 a.m. on April 9, 1987, Officer Eskew of the Clayton County Police Department was patrolling the Lake Regency Apartments when he observed a black male wearing a white sweatshirt and dark pants standing behind one of the buildings. Officer Eskew testified that this individual dropped to the ground as he approached and then ran when he stopped and exited his patrol car. The officer immediately broadcast a radio lookout for the individual.

Minutes later, Officer Acree of the Clayton County Police Department observed the appellant walking along a road which ran behind the Lake Regency Apartments. Noticing that the appellant matched the description of the suspect identified in the radio lookout, Officer Acree immediately confronted him and questioned him about his identity and destination. The appellant gave his correct name and address and explained that he was returning home from a friend's house. This explanation heightened Officer Acree's suspicions in that, based on his knowledge of the area, he believed the route by which the appellant had elected to return home was unnecessarily circuitous. Consequently, he contacted Officer Eskew by radio and asked him to come to the scene to attempt an identification. However, Officer Eskew replied that he had detained a suspect of his own and that he could not immediately leave his current location. Officer Acree thus placed the appellant in the back of his patrol car and transported him to Officer Eskew's location. Before doing so, however, he conducted a pat-down search of the appellant's person.

During the course of this search, Officer Acree "felt what felt like some folded up money or paper in [the appellant's] left rear pocket . . ." and removed it. Observing that the object was a piece of yellow paper similar in appearance to a traffic citation, he unfolded it in hopes of verifying the correctness of the name and address the appel-

lant had given him. The document proved to be the pawn ticket for the rape victim's chain and pendant. Officer Acree testified that he was "familiar with an item like this that had been taken several days prior in a rape" and immediately suspected "this possibly [might] be one and the same."

The appellant was subsequently identified by Officer Eskew as the individual who had fled from behind the apartment complex. He was thereupon given the *Miranda* warnings and placed under formal arrest for loitering and prowling. The following day, a search warrant was issued for his home, describing the item to be seized as a "white leather Nike tennis shoe, approximate size 8-½, left shoe." Such a shoe was in fact discovered and seized during the subsequent execution of the search warrant. During the trial, the rape victim positively identified the appellant as her assailant. *Held*:

1. The appellant contends that the seizure of the pawn ticket from his pocket violated his Fourth Amendment rights and that the trial court consequently erred in refusing to suppress this evidence, along with all other evidence stemming from its discovery. We disagree. Officer Acree clearly was authorized to detain the appellant briefly for the purpose of questioning him regarding his identity and his purpose for being in the area. It was, after all, approximately 1:30 in the morning, and the appellant matched the description of the individual who was the subject of the lookout to which the officer was responding. Moreover, Officer Acree testified that he was aware that the area had been the source of a large number of rape, burglary, and peeping-tom complaints in the recent past.

When the appellant was not able to offer a credible explanation for his presence in the area, the facts and circumstances within Officer Acree's knowledge became amply sufficient to establish reasonable ground for a belief on his part that the appellant was the same individual who had earlier fled from Officer Eskew, with the result that probable cause existed for the appellant's arrest at that point on the charge of "loitering or prowling." OCGA § 16-11-36 (a). See *Bell v. State*, 252 Ga. 267 (1) (313 SE2d 678) (1984) (upholding the constitutionality of the statute against a void-for-vagueness challenge). We consequently hold that the ensuing search of the appellant's person was authorized as a search incident to a lawful arrest. See generally *Eberhart v. State*, 257 Ga. 600 (2), 602 (361 SE2d 821) (1987); *Paxton v. State*, 160 Ga. App. 19, 20 (285 SE2d 741) (1981).

2. While the appellant complains that he was not advised of his *Miranda* rights until after he was identified by Officer Eskew, we have been cited to no evidence suggesting that he made any statement to Officer Acree between the time he was searched and placed in the patrol car and the time the *Miranda* warnings were given; and we are aware of no authority for the proposition that the legality of a

search conducted incident to a lawful arrest is contingent upon the giving of the *Miranda* warnings.

The questions which Officer Acree asked the appellant *prior* to searching him were not required to be preceded by the *Miranda* warnings because they were mere threshold questions asked at a time when the appellant was not in custody to ascertain his identity and purpose for being in the area. Accord *Aldridge v. State,* 247 Ga. 142 (2) (274 SE2d 525) (1981); *New v. State,* 171 Ga. App. 392 (1) (319 SE2d 542) (1984); *Hudson v. State,* 171 Ga. App. 181, 182 (1) (319 SE2d 28) (1984). See generally *Shy v. State,* 234 Ga. 816, 818-23 (218 SE2d 599) (1975). To the extent that this court's decision in Division 2 of *Shoemaker v. State,* 165 Ga. App. 124 (299 SE2d 414) (1983), may be interpreted as authority for the proposition that a person suspected of loitering and prowling must be advised of his *Miranda* rights before such threshold questioning may occur, it is hereby overruled.

3. The appellant contends that the warrant for the search of his residence was invalid because it was issued by a magistrate who had represented him some five years previously in a juvenile court case and who was therefore incapable of being neutral and detached. However, the magistrate testified without dispute at the hearing on the motion to suppress that he did not recognize the appellant's name at the time he issued the warrant but instead recalled his previous association with the appellant only after the appellant's trial counsel raised the issue in connection with the motion to suppress. Under these circumstances, the trial court clearly did not err in rejecting this attack on the validity of the search warrant.

4. The appellant contends that the warrant was additionally invalid because the information presented to the magistrate failed to establish probable cause for a belief that a search of his residence would result in the discovery of the mate to the sneaker which had been found outside the rape victim's wrecked automobile. We disagree.

The task of the issuing magistrate is simply to decide whether, under the totality of the circumstances, " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.' " *State v. Stephens,* 252 Ga. 181, 182 (311 SE2d 823) (1984), quoting *Illinois v. Gates,* 462 U. S. 213 (103 SC 2317, 2332, 76 LE2d 527) (1983). The information available to the magistrate in the present case established a substantial basis for a belief that the appellant was the individual who had fled the rape victim's vehicle. Consequently, there was a substantial basis for a belief that the mate to the shoe found outside that vehicle would be discovered

inside his residence.

5. The appellant contends that the trial court erred in not requiring the state to produce certain allegedly exculpatory information in response to his *Brady* motion. A portion of the information in question concerned the identity of another rape victim who had previously identified the appellant from a photographic display. However, it was apparent that this victim's identification of the appellant had been mistaken, inasmuch as her rape had occurred at a time when the appellant was serving a prison sentence for another offense. The state had made the fact of this misidentification known to the defense counsel but had declined to disclose the woman's identity to him.

While the appellant acknowledges that evidence concerning this misidentification would not itself have been relevant in the present case, he argues that the woman's identity should nevertheless have been disclosed to him because it *might* have led to material, exculpatory evidence supporting his defense that a misidentification had occurred in the present case. Such speculation clearly is insufficient to constitute a showing that the information in question was "beneficial evidence which was so important that its absence prevented [the appellant from] receiving a fair trial. . . ." *Rose v. State*, 249 Ga. 628, 629 (292 SE2d 678) (1982).

6. The appellant contends that the state should also have been required to disclose to him the identity of an Atlanta police officer whom Officer Eskew had pursued and detained shortly after his confrontation with the prowler at the Lake Regency Apartments. The facts surrounding the detention of this officer were brought out at the hearing on the motion to suppress, at which time defense counsel could have, but chose not to, inquire into his identity. Similarly, the appellant's counsel did not raise this issue during the pre-trial discussion of what information he was still seeking pursuant to his *Brady* motion. In light of these circumstances, and because the appellant failed to show how the information in question would have been materially beneficial to him, we hold that the trial court's failure to order the disclosure of this information also establishes no ground for reversal.

7. The appellant contends that the trial court erred in admitting evidence that he had committed a prior burglary and motor vehicle theft approximately a year before the events for which he was on trial. The prior burglary was similar to the burglary of the rape victim's home in the present case in several respects: Both had occurred at night, access to both dwellings had been obtained by removing a screen and entering through an open window as the victim lay asleep inside, a gold chain with a pendant had been taken from both victims, and on both occasions the appellant had departed the premises driv-

ing the victim's automobile. While the appellant points out that the circumstances surrounding the two burglaries were dissimilar in that it was not shown that he had used a weapon or raped the victim during the prior burglary, we hold that the similarities were amply sufficient to render evidence of the prior offenses admissible as proof of modus operandi, bent of mind, and course of conduct. Accord *Holloman v. State*, 167 Ga. App. 683 (1) (307 SE2d 266) (1983). See also *Bryant v. State*, 164 Ga. App. 555 (2) (296 SE2d 792) (1982). We must reject the appellant's argument that such proof was irrelevant because the victim in the present case directly identified him. Identity was clearly an issue in the present case, as noted by the appellant in his argument in support of the enumeration of error addressed in Division 5 of this opinion. Indeed, if the possibility of misidentification was not an issue in the present case, it is difficult to fathom how any harm could have resulted to the appellant from this or any of the other alleged errors enumerated in this appeal.

8. The appellant contends that the trial court erred in allowing the circumstances of the prior burglary and motor vehicle theft to be established before evidence had been presented (in the form of a certified copy of the indictment and guilty plea in that case) establishing that he was in fact the perpetrator of those offenses. This contention is without merit.

9. The appellant contends that the evidence was insufficient to support his conviction on any of the counts of the indictment and that it was particularly insufficient to support his conviction for the burglary of the Porterfield residence. We must agree that the evidence was insufficient to support the latter conviction. The evidence presented in support of this count of the indictment consisted in its entirety of Porterfield's testimony that he had observed the appellant standing outside his residence when he left to go to the video store about an hour before he discovered the burglary, his testimony that an Intratec nine-millimeter Luger had been taken during the burglary, and the evidence that an Intratec nine-millimeter Luger was found inside the rape victim's vehicle after the vehicle was stolen. However, it appears without dispute from the evidence that the discovery of the Luger inside the rape victim's vehicle occurred *prior to* the burglary of Porterfield's home. Moreover, Porterfield was never asked whether the weapon which was recovered from the vehicle appeared to him to be identical to the weapon taken from his home. Even assuming that the weapon introduced at trial was of precisely the same make as the weapon taken from Porterfield's home, it might possibly have been distinguished by its serial number, by the absence of scratch marks, or by other such characteristics. Under the circumstances, we must conclude that the evidence introduced in support of Count 6 of the indictment was insufficient to support a conviction

thereon.

With respect to the remaining convictions, it is fair to say that the evidence of guilt was overwhelming. The remaining convictions are accordingly affirmed. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed in part and reversed in part. Carley, C. J., Deen, P. J., McMurray, P. J., Birdsong, Sognier, Pope, Benham and Beasley, JJ., concur.*

DECIDED JANUARY 3, 1989 —
REHEARING DENIED JANUARY 19, 1989 — ▮

*John A. Beall IV*, for appellant.

*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney*, for appellee.