A98A1451. TAYLOR v. THE STATE.
(509 SE2d 388)

RUFFIN, Judge.

A jury found Hollan C. Taylor guilty of possession of marijuana and possession of marijuana with the intent to distribute. The trial court sentenced Taylor to ten years for both offenses, to be served concurrently. However, the trial court later entered an order merging the offenses and dismissing the charge for possession of marijuana,

the lesser included offense. Taylor appeals, asserting that there was insufficient evidence to support the jury's verdict on the possession with intent to distribute charge and that the trial court erred in allowing her pre-arrest statement to be admitted into evidence.[1] For reasons which follow, we affirm Taylor's conviction of possession of marijuana with intent to distribute.

1. Taylor asserts that there was insufficient evidence to support her conviction of possession of marijuana with intent to distribute. This argument is without merit.

" 'On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489) (1997).

Viewed in this light, the record shows that on September 26, 1996, Taylor entered a Mr. Zip convenience store around 5:30 p.m. to purchase lottery tickets. After leaving, she realized she had left her purse at the store. Taylor returned to Mr. Zip and asked Jimmy Jennings, a store clerk, whether he had seen her purse. He replied that he had not, and Taylor left her name and home telephone number and requested that he telephone her if he found her purse. Jennings subsequently found the purse and, after looking into it for identification, discovered that it belonged to Taylor and that it contained marijuana.

Jennings called his manager, who instructed him to call the sheriff's department. Officer Doug Licklider arrived at the convenience store and, upon examination of the purse, found a "large baggy with eighteen individual baggies of a green leafy substance [he] believed to be marijuana." He contacted his supervisor, who dispatched Detective Brad Palmer, a narcotics officer. Jennings told Detective Palmer that an African-American female with short hair and braces had left the purse. Detective Palmer retrieved a photograph from the purse, and Jennings positively identified Taylor.

---

[1] Taylor also asserts that her convictions for the two offenses constitute multiple punishments for the same crime. However, the trial court corrected this error by entering an order merging the offenses and dismissing her charge for the lesser offense. Thus, this enumeration is moot.

Upon Detective Palmer's instruction, Jennings telephoned Taylor and asked that she return to the store to retrieve her purse.

At approximately 11:30 p.m., Taylor and her brother arrived at Mr. Zip. Detective Palmer and Agent Tommy Farmer, who were located outside the store's parking lot, watched Taylor enter the store. Detective Palmer followed her into the store, saw her claim her purse from Jennings, and followed her out of the store. Upon exiting the store, Detective Palmer stopped Taylor to talk to her.

After identifying Taylor, Detective Palmer informed her that he was investigating the marijuana found in her purse. Palmer testified that Taylor "advised me that the marijuana was not hers, it was her boyfriend's. She advised that she was holding it for him. Earlier during the evening her boyfriend and another guy had cut up approximately a half pound of marijuana in the back seat of her car." Detective Palmer testified that the term "cut up" means "cut up for distribution. . . . [Y]ou have to cut it up and get the stems and seeds out of it, and then package it up for sale." He placed Taylor under arrest after she made the statement and then conducted an inventory search of the car and found marijuana seeds and a small plastic bag with a hole cut out of it in the back seat.

As the State acknowledges, mere possession of marijuana alone is insufficient to support a conviction for possession with intent to distribute. *Sams v. State*, 197 Ga. App. 201, 202 (1) (397 SE2d 751) (1990). However, the evidence reveals that Taylor was carrying 18 bags of marijuana in her purse, an amount indicative of an intent to distribute. See, e.g., *Palmer v. State*, 210 Ga. App. 717-718 (437 SE2d 490) (1993) (defendant's possession of nine rocks of crack cocaine was inconsistent with his claim he intended to smoke them all himself). Detective Palmer testified that the marijuana was wrapped in "dime bags," with a street price of $10 a bag. Moreover, he testified that there were very few "seeds" and "stems" found in the bags, which suggests that the marijuana had been "cut up," as Taylor stated to Detective Palmer, to make it a better product for sale on the street. See id. (the way rocks of cocaine were broken and sized suggested intent to distribute). Thus, viewed in a light most favorable to support the jury's verdict, this evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Taylor was guilty of possession of marijuana with intent to distribute. See *Jackson v. Virginia*, supra.

2. Taylor also enumerates as error the admission of her incriminating, pre-arrest statement to Detective Palmer that she was holding the marijuana for her boyfriend and that the boyfriend and another individual had "cut up" approximately a half-pound of marijuana in the back seat of her car earlier that evening. Specifically, Taylor contends that *Miranda* warnings were required because she

did not feel free to leave the scene, and because Detective Palmer's questions were aimed at obtaining information to establish her guilt. See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). We disagree.

"For *Miranda* to apply a person must be taken into custody or otherwise deprived of his freedom of action in any significant way. . . . [W]e apply a 'clearly erroneous' standard of review. To determine whether [Taylor's] statements were custodial, we apply an objective standard and determine whether a reasonable person in [her] situation would have believed [she] was physically deprived of [her] freedom of action in a significant way." (Citations and punctuation omitted.) *State v. Brannan*, 222 Ga. App. 372, 374 (2) (474 SE2d 267) (1996); see also *Shy v. State*, 234 Ga. 816, 819 (218 SE2d 599) (1975). In addition, we note that "*Miranda* warnings are not required at the initial contact between a police officer and a possible criminal defendant." (Punctuation omitted.) *King v. State*, 147 Ga. App. 163, 164 (1) (248 SE2d 294) (1978). Moreover, "[a] person is not in a state of custody merely because [she] is a prime suspect at the time [she] is interrogated by the police or their agent." *Hendrix v. State*, 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1998). Finally, "[e]ven if the police have probable cause to arrest at the time of the interview and secretly intend to charge the suspect at some future time, such facts are immaterial to a determination of whether the suspect was in custody at the time of the interview, except when and to what extent the police communicate their future intent to arrest during the course of the interview." Id.

Applying the standards outlined above, we conclude there was ample evidence to support the trial court's finding that Taylor's statement regarding the marijuana was non-custodial, voluntary, and admissible at trial. Officer Palmer, in plain clothes, approached Taylor in a public setting, as she was walking out of a convenience store; identified himself as an agent for the sheriff's office; asked her name; and then asked whether she knew anything about the marijuana. He did not accuse Taylor of owning the marijuana, made no threats or promises, did not tell her she was under arrest, and did not suggest she was not free to leave. Taylor responded that she knew of the marijuana in her purse. "[W]here the defendant is not in custody — as in the instant case, and responds to an officer's initial inquiry at an on-the-scene investigation that had not become accusatory, *Miranda* warnings [are] not required." *King*, supra at 164 (1). Under these circumstances, we cannot say that the trial court's decision that *Miranda* warnings were not required was clearly erroneous. A reasonable person in Taylor's position would not have "believed [she] was physically deprived of [her] freedom of action in a significant way." *Brannan*, supra at 374 (2).

Taylor also maintains that Detective Palmer's questions were aimed at establishing her guilt. "[W]e believe that in the present case [Detective Palmer] was not interrogating [Taylor] for the purpose of obtaining evidence to establish [her] guilt of a crime. . . . [Rather], we believe the officer was seeking to determine the nature of the situation confronting him." *Shy*, supra at 823.

Accordingly, Taylor's incriminating statement was admissible at trial despite the absence of *Miranda* warnings. See *Shy*, supra; *King*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 17, 1998.

*Weems & House, Brian M. House*, for appellant.
*Herbert E. Franklin, Jr., District Attorney*, for appellee.