## A99A1771. HUDSON v. THE STATE.
(529 SE2d 218)

RUFFIN, Judge.

Roderick Hudson was convicted of one count of armed robbery, five counts of aggravated assault, and one count of possession of a firearm during the commission of a crime.[1] He appeals, contesting the sufficiency of the evidence. He also contends that the trial court improperly questioned a witness and communicated with the jury in counsel's absence. Because each of his contentions is without merit, we affirm.

1. On appeal of a criminal conviction, we construe the evidence in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. We do not weigh the evidence or determine the credibility of witnesses but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As long as there is some competent evidence, even though contradicted, to support each

---

[1] The jury found Hudson guilty of a second count of armed robbery, but the trial court merged this with the first count. Hudson's brother and co-defendant, Rashawn Hudson, was also charged with two counts of armed robbery but was acquitted on both counts.

fact necessary to make out the State's case, the jury's verdict will be upheld.[2]

On May 16, 1997, a man entered Old South Restaurant in Brunswick with a pistol. A customer, Charles Harris, started to say something to him, but the gunman pointed his pistol at Harris and told him to sit down. The gunman then pointed the pistol at two employees, Catherine Jones and Cathy Ferra, and demanded all the money in the cash register. Jones handed the man approximately $140 in cash. Jones' husband, Calford Jones, who owned the restaurant, approached the gunman, who pointed the gun at him and told him to back up. At some point during the robbery, the gunman pointed his pistol at another customer, Tonnie Shadron, and told him to sit still. After taking the money, the gunman fled from the restaurant, and Mr. Jones chased after him.

During the chase, the gunman ran into an alley. He then emerged from the alley, pointed his gun at Mr. Jones, and started to get into the passenger side of a red Buick convertible. At this point, Sylvia Willis pulled up in her car and asked Mr. Jones if she could help. Mr. Jones asked Willis to follow the Buick. The gunman then ran off, and the Buick drove away. Willis followed the gunman and saw him run through the woods behind a car wash and into an alley behind a liquor store. She saw the red Buick behind the liquor store and followed it to a house on Ross Road, where two individuals got out of the car and entered the house. Willis gave this information to the police on her cellular phone and remained at the house until the police arrived.

Officer Jim Kelly arrived at the scene along with other officers. Hudson's brother, Rashawn Hudson, was standing in the yard. He told Kelly there was no one else in the house and gave him permission to search the house. Kelly entered the house with another officer and asked if anyone was there. After receiving no response, the officers began checking the rooms in the house. While searching, they heard noises coming from the attic. After a few minutes, the sheet rock in the ceiling began falling. The officers called for whoever was in the attic to come down, and after a few more minutes Hudson climbed down from the attic.

Officer Kelly and another officer then entered the attic to see if anyone else was hiding there. There was no one else in the attic, but Kelly found a Glock .40 caliber pistol and $144 in cash. The cash consisted of nine loose $1 bills, seventeen $5 bills, and fifty $1 bills bound with a wrapper. Hudson's palm print was found on the wrapper.

---

[2] *Taylor v. State*, 235 Ga. App. 323, 324 (1) (509 SE2d 388) (1998).

After he was arrested, Hudson gave a tape-recorded statement to police in which he admitted that he robbed the restaurant. Several witnesses from the restaurant identified Hudson as the robber at trial. This evidence was more than sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Hudson was guilty of the crimes charged.

2. Hudson contends that the trial judge's questioning of a prosecution witness violated OCGA § 17-8-57 because it suggested the judge's opinion of the case. However, because Hudson did not object to the judge's questioning or move for a mistrial, he has not preserved this issue for appeal.[3]

3. During a brief recess after the jury returned its verdict and was discharged, members of the jury apparently spoke with the judge about Hudson's co-defendant, Rashawn Hudson, whom they had acquitted of armed robbery. After the recess and before the start of Hudson's sentencing hearing, the judge told Rashawn Hudson that

> the jury has found you not guilty in the case, but they wanted me to pass along a message to you. They are very concerned of the turn in which your life has taken. And had it been for a little bit more evidence, you would have been facing life in prison. And they wanted me to make sure that if you ever come back up here before me on another offense, that I remember this trial.

On appeal, Hudson contends that it was improper for the judge to have contact with the jurors in the absence of Hudson and his counsel. It is true that trial judges should not communicate with jurors during trial about matters relevant to the case except in the presence of the defendant and his counsel.[4] But the purpose of this rule is clearly to prevent the jury from being prejudiced against the defendant. In this case, the jury had already found Hudson guilty and been discharged from service. Moreover, the jury's communication with the judge did not concern Hudson, but his acquitted co-defendant. There is no indication that the communication in any way influenced the trial court's sentencing of Hudson. "There is a pre-

---

[3] See *Sims v. State*, 266 Ga. 417, 418, n. 2 (467 SE2d 574) (1996) (objection based on violation of OCGA § 17-8-57 "is not reached on appeal unless a timely objection and/or motion for mistrial is made"); *Driggers v. State*, 244 Ga. 160, 162 (2) (259 SE2d 133) (1979). In this section of his brief, Hudson also mentions the trial court's refusal to accept his offer to plead guilty during the middle of trial. To the extent Hudson is contending that the trial court erred in refusing to accept the plea offer, this contention is outside the scope of the enumeration and cannot be considered as a basis for reversal. See *Scott v. State*, 238 Ga. App. 258, 262 (4) (518 SE2d 468) (1999).

[4] See *Collins v. State*, 191 Ga. App. 289, 290 (381 SE2d 430) (1989).

sumption that a trial judge, acting as a public official, faithfully and lawfully performs the duties devolving upon him."[5] In the absence of any evidence to the contrary, we must presume that the trial judge acted properly in sentencing Hudson.[6] Accordingly, this enumeration presents no basis for reversal.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 3, 2000.

*Ronald E. Harrison II*, for appellant.
*Stephen D. Kelley, District Attorney, Margaret L. Knight, Assistant District Attorney*, for appellee.

---

[5] (Punctuation omitted.) *Kelly v. State*, 238 Ga. App. 691, 693 (1) (520 SE2d 32) (1999).
[6] See id.; *Head v. State*, 233 Ga. App. 655, 658 (3) (b) (504 SE2d 499) (1998).
[1] Linnell had apparently leased the premises from a third party and was himself dispossessed prior to trial.