## 36602. ALDRIDGE v. THE STATE.

JORDAN, Chief Justice.

William Lee Aldridge was convicted of the murder of his wife and sentenced to life imprisonment. This is his appeal.

Early in the day on January 31, 1980, appellant Aldridge and a friend began drinking. Appellant continued to drink throughout the day. He returned home late in the afternoon. His stepdaughter, upon noticing his condition, informed him that her mother would be angry. She waited up the road to warn her mother about appellant's condition. Appellant meanwhile prepared himself a meal and attempted to eat it. When the victim and her daughter arrived home, a neighbor was talking with appellant.

An argument ensued between appellant and his wife. The stepdaughter overheard appellant mumbling about a gun as he went to the rear of their home. She ran out.

Appellant returned to the kitchen with his rifle, struck his wife with the butt of the gun and then fired over her head four times. The victim was able at one point to grasp the gun barrel and struggle with appellant. The neighbor, who was still present, attempted to pull appellant off his wife. However, appellant finally stuck the rifle to his wife's head and fired.

The victim remained conscious, and appellant tried to help her by holding a towel to her head. Appellant's stepdaughter had run for help. She found a policeman and told him that appellant had shot her mother. The two of them returned to the trailer where the policeman found appellant trying to help his wife. After calling for an ambulance, the policeman asked appellant what had happened. Appellant responded that he had been shooting around inside and had not meant to shoot his wife. Several hours later, the wife died. Appellant has no memory of these events.

Appellant was found guilty of malice murder and sentenced to life imprisonment. He enumerates six alleged errors on appeal.

1. Appellant complains that the trial court committed reversible error in refusing to charge the entirety of Code Ann. § 27-1503.

Appellant requested a charge on the defense of insanity and its legal result — hospitalization. The trial judge told appellant's counsel prior to the closing arguments that he would give his charge as requested. Counsel argued to the jury as follows: "...His Honor will charge you also that Bill Aldridge, if you find him not guilty by reason of insanity, temporary or otherwise, will be taken into the hands of the Court, and sent to a hospital and given the treatment that he needs."

While charging the jury, the trial court informed them that if they found appellant not guilty because of insanity that the form of their verdict must specify that as required by the first sentence of Code Ann. § 27-1503. However, he did not charge on the trial court's retention of jurisdiction over a defendant found not guilty by reason of insanity. Appellant argues both that the trial judge should have charged the entirety of Code Ann. § 27-1503, and that his counsel was, at least, misled by his statement that he would charge the entirety of his request when he eventually did not.

In *Pierce v. State,* 231 Ga. 731 (204 SE2d 159) (1974), we faced this identical issue and concluded that it would be inappropriate to charge all of Code Ann. § 27-1503. In *Hulsey v. State,* 233 Ga. 261 (210 SE2d 797) (1974), it was noted that the *Pierce* holding was based on the irrelevance of the consequence (hospitalization) of a verdict of not guilty due to insanity at the guilt-innocence phase of a trial. *Hulsey* concluded by pointing out that "the better practice is to charge only the mandatory part of Code Ann. § 27-1503 as stated in *Sanford v. State,* [(217 Ga. 825) (125 SE2d 478) (1962)]." 233 Ga. at 262. The mandatory part as stated in *Sanford* is only the first sentence of the code section relating to the form of the jury verdict.

Some confusion in this area appears to have been injected by language in *Lamb v. State,* 241 Ga. 10 (243 SE2d 59) (1978). In *Lamb,* in which the death penalty had been given but reversed for resentencing by that opinion, the trial judge did charge the jury on the mandatory hospitalization of an accused found not guilty by reason of insanity. The appellant in *Lamb* argued that the trial judge should have gone further and charged the prerequisites for release after such hospitalization. This argument was rejected as this court concluded that the trial judge had fulfilled his duty in charging the mandatory section of Code Ann. § 27-1503, citing *Hulsey,* supra, inter alia. Apparently, this holding has led to the inference that charging on the hospitalization portion of the statute is mandatory as well. It is not.

We agree with the Court of Appeals in *Albert v. State,* 152 Ga. App. 708 (263 SE2d 685) (1979) where it said "[w]hile the language in *Lamb v. State. . .*appears to support the appellant's contention that the latter provision must also be charged, a careful reading of *Hulsey v. State,* [supra]; upon which *Lamb* was based, persuades us that the only mandatory portion of the statute deals with the form of the verdict. The remaining portions of the statute concern matters which are not pertinent to the jury's determination of guilt or innocence and which the court has no duty to charge." 152 Ga. App. at 710-11. Consequently, the trial court did not err in not charging the entirety of Code Ann. § 27-1503 as requested by appellant.

The trial judge conceded to appellant's counsel that he may have misled him in informing him before closing argument that he would charge on Code Ann. § 27-1503 as requested. Appellant argues that his counsel was placed in the untenable position of having argued to the jury an issue which the trial judge failed to charge them as the law.

On the contrary, appellant's counsel had the benefit of arguing to the jury that appellant would be "taken in the hands of the Court" and given the necessary treatment if he had been found not guilty due to insanity. Since the trial judge was not required to charge the omitted portion of appellant's request, the jury would have had no way of knowing what the legal result of their verdict would have been, and, in that regard, counsel's "untenable position" in fact inured to appellant's benefit because the jury did learn that finding appellant not guilty by reason of insanity would not have meant setting him free. Cf. *Chase v. State,* 148 Ga. App. 690 (252 SE2d 194) (1979), where the trial judge gave no charge authorized by the evidence on a lesser included offense as he had indicated before argument that he would. We find no reversible error on this issue.

2. Appellant contends that his statement to the police officer who arrived first should not have been admitted because he was not given his Miranda warnings.

To clarify the facts involved in this issue, we note that appellant's stepdaughter ran from the trailer and stopped a policeman. The policeman was a relative of the victim. She told him "T-Bone shot Mama." The policeman knew that "T-Bone" was appellant's nickname. He entered the trailer, saw appellant attempting to aid the victim, removed the rifle, returned with it to his patrol car, and radioed for medical help. He went back to the trailer and asked appellant what happened. Appellant then made the statement, for the first time, that he had not meant to shoot his wife. This testimony was admitted, over objection, after a Jackson-Denno hearing.

The State contends that appellant's statement was elicited, if at all since the officer did not recall with certainty if he had actually asked appellant what had happened or if appellant had volunteered his statement, as part of the initial, on-the-scene investigation.

This court dealt at some length with the same issue in *Shy v. State,* 234 Ga. 816 (218 SE2d 599) (1975). While recognizing that Miranda warnings are not limited to station-house interrogations as long as there is some significant deprivation of an individual's freedom of action, we noted a police officer may make a threshold inquiry to ascertain if there were any current danger to himself or to others present at the scene. 234 Ga. at 818-23. So long as the interrogation is not aimed at obtaining information to establish a

suspect's guilt but is instead aimed at determining the nature of the situation upon the arrival of the policeman on the scene, some initial inquiry may, under the circumstances, be permissible before Miranda warnings are given.

In the instant case, the policeman was confronted first with a seriously injured woman and a rifle in the immediate area. Appellant asked him to call for medical assistance. He removed the rifle and returned to his car to call for aid. He returned to the trailer where appellant asked him to help him with his wife. During the Jackson-Denno hearing, the policeman, upon being asked if he had immediately put appellant under arrest, testified that "right at the time I had all I could to do at that time to assist on the scene." He asked appellant what had happened. Others were present attempting to help the victim.

We agree with the trial court that the policeman's question to appellant was merely an attempt to ascertain the nature of the situation confronting him and to insure that he and the others present were free from danger. Moreover, appellant's allegedly inculpatory statement, that he had not meant to shoot his wife, takes on a less condemning air when it is understood that he never denied the shooting, but defended himself instead on the grounds that he had no memory of the incident and was insane at the time of the crime's commission. Cf. *Craver v. State,* 246 Ga. 467 (271 SE2d 862) (1980).

3. Appellant requested the trial court to charge on the presumption of good character. The trial court refused on the basis that appellant's character had not been put in issue.

Appellant cited the case of *Bennett v. State,* 86 Ga. 401 (12 SE 806) (1890), to the trial court. Briefly, *Bennett* held that neither the State nor the defendant may argue to the jury concerning the character of the accused unless some evidence of the same has been presented once the defendant puts his character in issue. Appellant argued that *Bennett* held that there is a presumption of good character which must be charged. The trial court in the case at bar distinguished *Bennett* on the basis that the prosecuting attorney in *Bennett* argued to the jury that the defendant must have had a bad character since he presented no evidence as to good character, unlike this case where there was no evidence either way. We agree.

Appellant states that there was evidence of good character presented. Three witnesses were asked what appellant was like sober. All three responded that he was an average, nice person. The State argues that the witnesses' opinion of appellant while sober did not establish their knowledge of his general reputation in the community, so as to place his character in issue. "A charge on good character is

only required when direct examination relates to *general reputation, good* or *bad.* [Cit.]" *Cherry v. State,* 148 Ga. App. 655 (252 SE2d 180) (1979) (Emphasis supplied.) There is no merit to this enumeration of error.

4. Appellant filed a special plea of insanity contending that he was mentally incompetent to stand trial, and a separate hearing was held on this issue before the trial judge who ruled appellant competent. The basis of appellant's plea was his current amnesia surrounding the shooting incident.

In 1960, this court established that the test for determining the competency of a defendant to stand trial is whether he is "capable *at the time of the trial* of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands." *Brown v. State,* 215 Ga. 784, 787 (113 SE2d 618) (1960). (Emphasis supplied.) Appellant was evaluated on these criteria by an expert appointed by the court. He testified that appellant was competent to stand trial, expressing only the reservation that he might not be fully capable of assisting his attorneys due to his amnesia. After hearing cross-examination of appellant and questioning him himself, the trial judge found appellant competent, specifically referring to the criteria of *Brown.*

Amnesia does not, per se, constitute incompetency to stand trial. United States v. Swanson, 572 F2d 523, 526 (5th Cir., 1978). "[R]ecognizing that the fundamental fairness of trying an amnesiac defendant may vary depending on the crime and the circumstances surrounding the claimed loss of memory, we hold that the propriety of trying an amnesiac defendant is a question to be determined according to the circumstances of each individual case." Among the factors a trial judge should consider are the defendant's present ability to take the stand on matters other than the event he cannot remember and the presence or absence of other psychological conditions that would hinder his present ability to assist his counsel. Additionally, a trial judge should consider the ability of the defense and prosecution to reconstruct events without defendant's testimony; the strength of the prosecution's case against defendant; and access to the prosecution's files in helping defendant prepare his defense. 572 F2d 523, supra, at 527.

Bearing these persuasive factors in mind in the instant case, we conclude that the trial court was correct in finding appellant competent to stand trial. Appellant did take the stand in his own defense and testified about events other than the shooting. His stepdaughter and one other eyewitness reconstructed the remaining

occurrences. There was testimony from a psychologist and a psychiatrist hired by appellant concerning his alcoholism and ability to form the requisite intent to shoot his wife, but none of it was aimed at proving his present insanity or inability to stand trial. This enumeration is without merit.

5. Appellant attempted to introduce the possibility that his wife may have advanced on him with a steak knife during their argument. The one eyewitness to the actual shooting testified that he never saw the victim advance on appellant with a steak knife. As there was no evidence of provocation, the trial court was correct in refusing to charge on voluntary manslaughter. See *Swett v. State,* 242 Ga. 228 (248 SE2d 629) (1978).

6. The evidence was sufficient to convince a rational factfinder beyond a reasonable doubt that appellant was guilty of the malice murder of his wife. See Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 3, 1980 —
REHEARING DENIED FEBRUARY 17, 1981.

*Charles H. Watt III, Roy M. Lilly, Jr.,* for appellant.
*H. L. Cole, District Attorney, Dwight May, Assistant District Attorney, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.