A90A1112. WHATLEY v. THE STATE.
(395 SE2d 582)

BIRDSONG, Judge.

Appellant, Dallas Lee Whatley, appeals his conviction of trafficking in cocaine, in violation of the Georgia Controlled Substances Act, and of possession of a firearm during the commission of a felony involving the possession of a controlled substance as provided in OCGA § 16-13-31, said offense being in violation of OCGA § 16-11-106 (b) (4).

Certain Atlanta police officers were en route to a known drug activity area, having received information that a person named "Dallas" was selling drugs in the area at night. While en route, a radio call was received that a juvenile or juveniles had discharged a firearm at an address within the drug activity area.

Upon arriving at the address, the officers observed appellant either outside the building or in the hallway with a pistol in his hand.

Appellant immediately entered a nearby apartment; two police officers followed. Appellant ran into a bedroom and threw the pistol down. He resisted an attempt to frisk him, was forcibly restrained, handcuffed, and forced onto the floor. The pistol was loaded with a round in the chamber. Appellant was carrying a holster with additional clips of ammunition, and a pouch containing certain personal jewelry and $2,654, a large quantity of which was in small denominations.

While appellant was being taken outside, a confidential informant told policemen that appellant had recently driven a brown Cadillac, which contained drugs, to the building. The Cadillac was found parked in a driveway to a parking lot in front of the building. An Oldsmobile Cutlass Supreme was parked approximately three to five feet behind the Cadillac. A key ring containing the Cadillac keys and control boxes to the car's alarm system was found on appellant. The Cadillac alarm went off as the officers opened the car with the keys. Crack cocaine, wrapped in nineteen baggies, was found inside a brown paper bag and under the hood of the car. The cocaine was 80 percent pure and weighed 519 grams. In the meantime, the informant informed the police that the Oldsmobile Cutlass also belonged to appellant, that appellant had driven it to that location, and that this vehicle also contained drugs. A shoe box containing eight sandwich bags of cocaine, one sandwich bag of crack cocaine, and $3,160 was found in the trunk of the Oldsmobile. The total weight of the cocaine was approximately 200 grams, and it was 76 percent pure cocaine.

Appellant presented evidence that the Oldsmobile was a car appellant had rented while a window in his wife's brown Cadillac was being repaired, and the drugs were placed there by a friend to whom he had loaned the car. His friend, currently in jail for a parole violation, testified that the box of drugs had been placed in the car without appellant's knowledge; however, the friend denied knowing anything about the money. Appellant denied any knowledge of the cocaine in either vehicle. His explanation for the presence of drugs in the Cadillac was that they must have been planted there when an unknown person or persons broke the window and burglarized the car. He believes that he could have been framed by a man named "Buster," as he got into an argument with "Buster" when the latter tried to sell drugs to his brother. Appellant admitted in open court that he had the loaded gun in his hand when he first saw the police officers, that he "ran back . . . toward the bedroom . . . and [threw] the gun [down]," and that he had extra clips of ammunition on his person. *Held*:

1. Appellant asserts that the trial court's failure to require disclosure of the identity of the confidential informant violated his Sixth Amendment right of confrontation.

Review of the transcript reveals that both appellant's written motion to suppress and motion to disclose informant asserted that, in fact, there was no informant. Appellant maintained that the police were merely asserting the existence of an informant in order to cure a deficiency in its affidavit in support of search warrant. Subsequently during the suppression motion hearing, appellant, through his counsel, made an admission in judicio that "[w]e have discovered the identity of the *so-called* informant. The *so-called* informant is none other than Darren Marshall." (Emphasis supplied.) Appellant subsequently called Darren Marshall as a witness at the suppression hearing, and Marshall testified that at no time did he mention appellant's name to the police or tell them that appellant was dealing in drugs. At no time did appellant assert on the record that his Sixth Amendment right of confrontation was being violated by nondisclosure of the identity of the informant.

As the Sixth Amendment issue of confrontation was not expressly raised at trial and ruled upon, there exists nothing for us to review. See generally *Ray v. State*, 187 Ga. App. 451, 452 (370 SE2d 629); *Weaver v. State*, 179 Ga. App. 641 (7) (347 SE2d 295).

Appellant argues in its brief that disclosure of the informant also denied him the opportunity to present a sole and necessary witness in his behalf, and therefore constituted error within the meaning of *Moore v. State*, 187 Ga. App. 387 (370 SE2d 511). The case sub judice clearly is distinguishable from the facts of *Moore*. Further, we find no evidence that this issue was ever specifically raised in the trial court, and therefore it is not preserved upon appeal. *Ray*, supra; *Weaver*, supra.

Additionally, at trial appellant testified in his own behalf and in essence asserted that in regard to the drugs found in the Cadillac, he was framed. He further testified that he had a confrontation with the man known as "Buster," (who apparently was Darren Marshall) and that someone must have planted the drugs in the Cadillac when it was broken and burglarized earlier that morning. It was the man with whom he. had the confrontation who was talking with the police and who pointed right at him, and it was this man who framed him. In determining whether, in this case, it was error to fail to disclose the identity of the informant for use by a defendant in presenting his defense, we again will use the balancing test and the factors considered in *Roviaro v. United States*, 353 U. S. 53, 62 (77 SC 623, 1 LE2d 639). "In addition, the court may consider as a relevant balancing test factor that, in the absence of a contrary showing, a witness 'cannot reasonably be expected to appear in court and incriminate himself.' [Cit.] The appellate court, in determining the propriety of disclosing the identity of an informant, may consider all relevant evidence contained in pretrial, trial and post-trial proceedings." *Walton v. State*,

194 Ga. App. 490, 491 (1) (390 SE2d 896); see *Moore*, supra at 389 and 391. Applying this test, we are satisfied, under all the relevant circumstances, that in this case the trial court did not err in refusing to disclose the identity of the confidential informant for use in appellant's defense.

2. Appellant asserts that the trial court erred in failing to charge properly and completely on the definition of circumstantial evidence and on the type of circumstantial evidence necessary to prove guilt beyond a reasonable doubt.

The charge to the jury included an instruction pertaining to circumstantial evidence. Subsequently, the trial court inquired whether the parties had any exceptions to the charges. Appellant elected not to reserve the right to object to the charges until motion for new trial or on appeal; rather he took three exceptions thereto, none of which included the error herein enumerated. Accordingly, appellant's assertions of error to the circumstantial evidence charge given to the jury and to the trial court's failure to amplify the circumstantial evidence charge are waived. *Pruitt v. State*, 258 Ga. 583, 590 (14) (373 SE2d 192); *Wright v. State*, 182 Ga. App. 570 (1) (356 SE2d 531).

3. Appellant asserts that the trial court erred in denying his motion for directed verdict with respect to the count charging appellant with violation of OCGA § 16-11-106 (b).

At the outset we note that at trial appellant made no constitutional challenge to the statute, either on the grounds of vagueness or of overbreadth, and made no claim that the statute was unconstitutional as applied to him. Neither has he asserted such issues in his brief. "[A] motion for directed verdict in a criminal trial should only be granted where there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law." *Taylor v. State*, 252 Ga. 125, 127 (1) (312 SE2d 311).

Moreover, pretermitting any issue of whether OCGA § 16-11-106 (b) requires proof of a reasonable nexus between the possession of the weapon and the averred drug violation is the fact that the evidence in this case, viewed in the light most favorable to supporting the verdict as required upon appellate review, establishes a reasonable nexus between appellant's possession of the weapon and the averred drug violation.

Review of the transcript reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offenses of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). This enumeration is without merit.

4. Appellant asserts that the trial court erred in denying his motion to suppress because the search under the hood of a vehicle is not consistent with the rationale underlying the practice of impound-

ment.

The evidence is in conflict as to whether the drugs were seized during the course of an inventory conducted prior to vehicle impoundment or during a warrantless search of a vehicle for contraband.

Appellant argues, inter alia, that it is inconsistent with the legitimate purpose of an inventory to look under the hood of a vehicle. An inventory search cannot be conducted as a subterfuge to enable the police to conduct a warrantless investigative search without probable cause. *Gaston v. State*, 155 Ga. App. 337, 339 (270 SE2d 877). However, appellant's reliance on *Arnold v. State*, 155 Ga. App. 581 (271 SE2d 714) as viable precedent that a legitimate inventory can never be conducted under the hood of a car is misplaced. An inventory conducted under the hood of a vehicle, prior to or after impoundment, is not constitutionally prohibited per se. Whether such an inventory meets the standards of *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000), depends on the circumstances of each case. If the scope of the inventory was reasonably related to one of the legitimate purposes for inventory found in *Opperman*, and if the inventory was not conducted as a pretext or subterfuge for an illegal warrantless investigatory search, then no legitimate reason appears for declaring an inventory unreasonable merely because its scope extended under the hood of the vehicle. See generally *Opperman*, supra at 369, 376. Thus, an inventory has been upheld where the police, in accordance with standard police procedure, conducted an inventory under the hood of the parked vehicle to see if the battery was present. *People v. Hardy*, 395 NE2d 743 (A.C. Ill.) Suffice it to say that numerous legitimate reasons might exist to extend the scope of an inventory under the hood. Generally, it is reasonable to obtain motor and hidden identification numbers in order to assist or enable the police to retrieve the car in the event it should be stolen while in their custody, or to inventory any customized equipment or alarm systems that might be present and subject to vandalism while the vehicle is in impoundment.

But regardless of whether a valid inventory was conducted in this case, the trial judge ruled that the seizure of the contraband from the Cadillac was pursuant to a lawful warrantless search of the automobile. We agree. The police had probable cause to conduct a warrantless search of the Cadillac for drugs, and any deficiency in the basis of the informant's knowledge was more than adequately compensated by the totality of the attendant circumstances (*McKinney v. State*, 184 Ga. App. 607 (1) (362 SE2d 65)).

5. Appellant asserts that the trial court erred in failing to exclude appellant's statement to the police concerning whether he possessed a gun permit, because the statement was made after the arrest was

made but prior to the reading of *Miranda* rights. The trial court in essence found that the statements were admissible because, at the time, appellant was not in a state of custody that necessitated a *Miranda* warning. Rather, the court found that the statements were made immediately after a forcible *"Terry* pat down search," and that the pat down was forcible because appellant "was not willing to submit." The evidence is in conflict whether appellant was in a formal state of arrest at the time he uttered this particular statement. Moreover, the issue presented, as to whether appellant was in custody for *Miranda* purposes, is a mixed question of law and fact. We will not reverse the trial court's fact findings which underpin its legal conclusion made at a suppression hearing, unless they are clearly erroneous. See *Santone v. State*, 187 Ga. App. 789, 790 (371 SE2d 428); *Jones v. State*, 184 Ga. App. 328 (361 SE2d 693). The court's fact findings as to this issue were not clearly erroneous. Having therefore accepted those underpinning fact findings, we are satisfied that the legal conclusion of the trial court was correct.

Moreover, assuming that the trial court erred in admitting appellant's statement that he had no permit for the weapon and that such error was of constitutional magnitude, we find that such error was harmless beyond a reasonable doubt in light of the overwhelming evidence of appellant's guilt. *Palmer v. State*, 186 Ga. App. 892, 897 (369 SE2d 38).

*Judgment affirmed. Banke, P. J., and Cooper, J., concur.*

DECIDED JUNE 4, 1990 —
REHEARING DENIED JUNE 21, 1990 — CERT. APPLIED FOR.

*Jonathan Goldberg*, for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Keith L. Lindsay, Assistant District Attorneys*, for appellee.