## A92A1756. CARROLL v. THE STATE.
(430 SE2d 649)

McMurray, Presiding Judge.

Defendant Carroll was convicted of the offense of cruelty to children in that she maliciously caused excessive physical pain by breaking the victim's leg. This appeal is taken from the denial of defendant's motion for new trial. *Held*:

1. Defendant's first enumeration of error raises an issue as to whether the evidence is sufficient to authorize her conviction. Viewed in a light to support the verdict, the evidence shows that at the time of the events which led to her conviction defendant was caring for the victim, the three-year-old son of her boyfriend, with whom she was living. Defendant laced the victim's shoes, gave the shoes to him and instructed him to get dressed while she hurriedly dressed herself. Shortly thereafter, defendant went to the victim to brush his hair and tie his shoes. The child was completely dressed; however, one of his shoelaces had become tangled in a knot, and the shoe would not come off. Appellant grabbed the back of the shoe and was twisting the foot when she heard a "loud pop," and the victim cried out in pain. Medical expert testimony established that the victim suffered a spiral fracture to the tibia (which extended from the knee to the ankle) which was caused by a twisting of the bone at one end while the other end remained stabilized; that the injury was caused by "significant" and "deliberate" force; and that spiral fractures in children are presumed child abuse until proven otherwise.

Testimony provided by the Child Protective Services Investigator who interviewed the victim revealed, on the basis of interviews with the victim and defendant, that defendant was in a hurry to leave the house to run errands and was angered by the fact that the victim unlaced his shoestring and it had become tangled. The investigator testified that the victim said defendant was mad. The investigator also demonstrated for the jury how the victim described the incident to her. In a handwritten statement, defendant admitted attempting to jerk the shoe off the child's foot before she realized the shoelace was knotted. Defendant indicated that when she asked the victim why he unlaced his shoe, she did not realize the anger she felt or the anger conveyed in her voice. She wrote that her nerves were "shot," her patience was thin, and she felt that way most of the time because of the way her boyfriend treated her.

Defendant relied on the defense of accident and argues that the State has failed to prove that the injury was not accidental. Under

the circumstances of the case sub judice the defense of accident raises an issue as to defendant's intent. Such an issue is a question of fact to be determined upon consideration of defendant's words, conduct, demeanor, motive, and all other circumstances connected with the act for which she is prosecuted. *McGahee v. State*, 170 Ga. App. 227 (1) (316 SE2d 832). "This court does not weigh the evidence. Questions of the weight to be given evidence and to the credibility of witnesses are solely for the jury." *Hayes v. State*, 203 Ga. App. 409, 410 (417 SE2d 45). The evidence was sufficient to enable a rational trier of fact to find defendant guilty beyond a reasonable doubt of the offense of which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Mitchell v. State*, 206 Ga. App. 672 (1) (426 SE2d 171).

2. Defendant contends the trial court's admission of her written statement violated her rights under the Fourth, Fifth and Fourteenth Amendments. The record reveals that when the Department of Family & Children Services received a report of possible child abuse, a Child Protective Services Investigator, Ms. Harris, and a detective from the sheriff's department, went to defendant's home to investigate. Defendant was interviewed by the detective, and based on her statement to the detective regarding the victim's broken leg, she was arrested and taken to the sheriff's department where she was advised of her *Miranda* rights and signed a written waiver form. Appellant was then given paper and a pen and was left alone to write her statement. Defendant argues that the initial interview at her home was an illegal investigatory seizure because she was not advised of her *Miranda* rights before the interview so that her subsequent arrest was without probable cause and her written statement was the inadmissible fruit of that illegal arrest.

"'A person is not entitled to *Miranda* warnings as a matter of right, even through that person is a suspect, unless that person had been taken into custody or has been deprived of freedom of action in another significant way.' *Woods v. State*, 242 Ga. 277, 279 (2) (248 SE2d 612) (1978), citing *Beckwith v. United States*, 425 U. S. 341 (96 SC 1612, 48 LE2d 1) (1976). Accord *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984). Although the focus of the investigation may be on defendant, he must also be in a custodial situation for *Miranda* to apply. *Beckwith*, supra at 347. *Shy v. State*, 234 Ga. 816, 818 (I) (218 SE2d 599) (1975)." *Brinson v. State*, 191 Ga. App. 151, 152 (4) (381 SE2d 292). In the case sub judice, defendant gave two statements to the detective. As to the first or oral statement, defendant was not in a custodial situation such as would invoke the protection of *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694). In this regard, it is clear from colloquy at the *Jackson-Denno* hearing that the trial court concluded that defendant was not in custody until

the detective decided to arrest her after she had made the oral statement. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a defendant's statement to law enforcement officers will be upheld on appeal. *Frazier v. State*, 257 Ga. 690, 697 (14) (362 SE2d 351); *Barrs v. State*, 202 Ga. App. 520, 521 (3) (414 SE2d 733); *Whatley v. State*, 196 Ga. App. 73, 78 (5) (395 SE2d 582).

The second or written statement was given after defendant's arrest and after she was read the *Miranda* warnings. Therefore, the requirements of *Miranda* were satisfied in the case sub judice and there was no error in the admission of defendant's statements.

3. In three enumerations of error, defendant asserts prosecutorial and judicial misconduct in the State's impeachment of defendant based on portions of a physician's appointment records which were subpoenaed by defense counsel, addressed to and delivered to the courtroom, and thereafter inadvertently given to the prosecutor by the trial judge. During the trial, the judge instructed defense counsel that the records needed to be admitted as evidence to perfect the trial record; however, counsel refused to offer them for admission. " 'It is a well-established appellate rule that " 'the burden is on the appellant to show error by the record, and when a portion of the evidence . . . bearing upon the issue raised by the enumeration of error, is not brought up so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result.' " (Cit.)' [Cit.]" *Wells v. State*, 201 Ga. App. 398, 399 (411 SE2d 125) (1991). Thus, we must assume there was no prosecutorial or judicial misconduct.

4. Over objection, the trial court permitted a witness to testify who was not on a list of witnesses provided to defendant in response to a demand pursuant to OCGA § 17-7-110. Nonetheless, defendant was allowed ample opportunity to interview the witness so that the purpose of OCGA § 17-7-110 was satisfied. Under these circumstances the trial court properly permitted the witness to testify. *Moss v. State*, 196 Ga. App. 81, 83 (2) (395 SE2d 363).

5. In her final enumeration of error, defendant contends that the trial court erred in permitting a State's witness to deliberately inject the defendant's character in evidence. However, the testimony was relevant to show intent, motive, plan, scheme and bent of mind, and was not rendered inadmissible because it incidentally placed in issue the character of the defendant. *Millis v. State*, 196 Ga. App. 799 (1) (397 SE2d 71); *Causey v. State*, 154 Ga. App. 76, 79 (3) (267 SE2d 475).

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Beasley, P. J., Andrews, Johnson and Blackburn, JJ., concur. Cooper, J., dissents.*

COOPER, Judge, dissenting.

I respectfully dissent. It is my view that the detective's involvement in the initial interview at appellant's home required the giving of *Miranda* warnings.

"Miranda warnings are not limited to station-house interrogations as long as there is some significant deprivation of an individual's freedom of action. . . ." *Aldridge v. State*, 247 Ga. 142, 144 (2) (274 SE2d 525) (1981). The State contends that appellant was not "in custody" in her home during the initial interview and that it is not practical or legally necessary to extend *Miranda* to the initial inquiry at the scene of a child abuse referral. In *Banther v. State*, 182 Ga. App. 333 (355 SE2d 709) (1987), this court had the opportunity to rule in a case which, at first blush, appears to be on all fours with the instant case. In *Banther*, the defendant sought the exclusion of admissions made in an interview with a Department of Family & Children Services' caseworker who was accompanied by a sheriff's deputy. This court held that the trial court did not err in admitting the statements because the caseworker was not a law enforcement officer, and at the time of the interview, the defendant was at most a "potential criminal defendant" who had not been taken into custody or deprived of his freedom in any significant way. The court also rejected the defendant's contention that the uniformed deputy's presence required the conclusion that he was in custody because the deputy did not ask any questions, he was only present for the caseworker's protection, and the defendant was free to leave at any time. However, whether a defendant is "free to go" is only a factor to be considered in determining whether *Miranda* warnings are required. *Shy v. State*, 234 Ga. 816, 819 (218 SE2d 599) (1975). In *Shy v. State*, the Georgia Supreme Court discussed several criteria to be considered in making the distinction between custodial and noncustodial interrogation: " 'probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and *focus of the investigation*.' [Cit.] These all point to attempts by the police to gather incriminating information. [Cit.]" (Emphasis supplied.) Id. at 821. When an officer initially arrives at the scene of a crime, he "may make a threshold inquiry to ascertain if there were any current danger to himself or to others present at the scene. [Cit.] So long as the interrogation is not aimed at obtaining information to establish a suspect's guilt but is instead aimed at determining the nature of the situation upon the arrival of the policeman on the scene, some initial inquiry may, under the circumstances, be permissible before Miranda warnings are given." *Aldridge*, supra at 144-145 (2).

In *Banther*, supra, it was significant that the caseworker was not a law enforcement officer; that the deputy sheriff did not participate in the questioning; and that the deputy merely accompanied the

caseworker to insure her safety. In addition, the purpose of the interview was to determine whether the defendant's stepdaughter should be placed in foster care. However, in the instant case, the record demonstrates that prior to the interview, appellant was a target in the investigation. The detective and Ms. Harris had received information that appellant was allegedly responsible for the victim's broken leg; that appellant was a "very angry person"; and that all the children in her care allegedly had been mistreated and were at risk. Therefore, the purpose of the interview was specifically to obtain information from appellant regarding her involvement in the victim's broken leg. The record also reveals that although appellant allowed the detective and Ms. Harris to enter her home, she was nervous and upset. The investigators had to quell appellant's fears to encourage her to talk about the victim's broken leg. Moreover, the interview was not conducted by Ms. Harris. Instead, the detective questioned appellant specifically about the victim's broken leg and promptly arrested her based on her answers. Thus, it appears that the "focus of the interview" was not *solely* to ascertain whether there was any continuing danger to the victim, the other children, Ms. Harris or the detective but was " 'aimed at obtaining information to establish [appellant's] guilt.' [Cit.]" *State v. Overby*, 249 Ga. 341, 343 (2) (290 SE2d 464) (1982). Although we have recently held that "[i]t was not incumbent upon the caseworker to advise defendant of his *Miranda* rights because she was not a law enforcement officer" (*Rucker v. State*, 203 Ga. App. 358 (2) (416 SE2d 871) (1992)), because the detective conducted the interview of appellant, *Miranda* warnings should have been given. Accordingly, appellant's written statement, given after her unlawful arrest, should have been suppressed.

DECIDED MARCH 19, 1993 —
RECONSIDERATION DENIED APRIL 1, 1993

*J. M. Raffauf, Alden W. Snead*, for appellant.
*David McDade, District Attorney, Lois W. Gerstenberger, Assistant District Attorney*, for appellee.