A94A0377. BILLINGS v. THE STATE.
(441 SE2d 262)

BLACKBURN, Judge.
In a four-count indictment, the appellant, Robert James Billings,

was charged with armed robbery, two counts of aggravated assault, and possession of a firearm by a convicted felon. A co-defendant, Derrick Ladell Slappey, was also charged with armed robbery and two counts of aggravated assault.[1] Following a trial by jury, Billings was found guilty of all of the offenses. The trial court subsequently vacated the jury's verdict on one charge of aggravated assault because the indictments drawn for armed robbery and the aggravated assault alleged precisely the same shooting. See *Lowery v. State*, 209 Ga. App. 5 (4) (432 SE2d 576) (1993). Billings' motion for new trial was denied by the trial court, and this appeal followed.

The evidence produced at trial by the State showed that Robert Shannon (Shannon), Jessie Shannon, and their 16-month-old daughter stopped at a Hampton Inn in Tift County on the evening of February 6, 1992. As they entered their motel room at approximately 9:00 and attempted to close the door, Billings suddenly appeared in the doorway wielding a gun, and demanded Shannon's wallet. Although Shannon told Billings to leave, Billings again demanded Shannon's wallet and threatened to kill his wife if his demands were not met. Shannon tossed his wallet outside of the door onto the walkway of the motel. At Billings' request, a 15-year-old accomplice picked up the wallet and informed Billings of its contents. The assailants fled after removing approximately $2,000 in cash from the wallet. Later that evening Billings was seen in a trailer park in the vicinity of the motel, and fled on foot as he was approached by a deputy sheriff. The Shannons positively identified Billings as their assailant on the day after the incident from photographs in mug books, and again identified him in court at trial. Over Billings' objection, the pictures identified by the Shannons and the mug books were admitted in evidence.

In addition to the Shannons, the State presented the testimony of Slappey and the 15-year-old accomplice. Both men testified that Billings robbed the motel patron and shared the proceeds of the robbery with them. Raymond Drennon, an investigator with the City of Tifton Police Department, testified about the contents of a custodial statement voluntarily made by Billings during an interview on February 25, 1992, the morning after his arrest for a parole violation. The interview was initiated by Drennon and another investigator. In his inculpatory statement, Billings admitted that he and two accomplices appeared at Shannon's motel door armed with a .22 revolver, and demanded Shannon's wallet. After Shannon complied with his request, he and his accomplices fled on foot and later split the robbery proceeds. Evidence on Billings' 1991 felony conviction for robbery by in-

---

[1] In December 1992, prior to trial, Slappey pled guilty to a reduced charge of robbery by force for his participation in the incident.

timidation was also admitted after the jury returned a guilty verdict on the armed robbery and aggravated assault charges.

1. Billings maintains that the evidence produced at trial was insufficient to support his conviction for the offenses charged. On the contrary, the uncontroverted evidence produced at trial showed that Billings, a convicted felon, robbed Shannon of the contents of his wallet while armed with a gun, and threatened to kill his wife. While Billings challenges Shannon's pre-trial identification of him as the perpetrator due to Shannon's alleged uncertainty, any "uncertainty expressed by the victim regarding his [pre-trial] identification of [Billings] was merely a factor to be considered by the jury in determining the weight of this testimony." *Buckner v. State*, 209 Ga. App. 107, 108 (1c) (433 SE2d 94) (1993). "Appellate courts consider only the sufficiency, and not the weight of the evidence. [Cit.]" *Jacobs v. State*, 207 Ga. App. 714, 716 (3) (429 SE2d 256) (1993). See also *Cox v. State*, 197 Ga. App. 240 (5) (398 SE2d 262) (1990). In light of the overwhelming evidence produced at trial, we must conclude that a rational trier of fact could determine Billings' guilt beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hesterlee v. State*, 210 Ga. App. 330 (1) (436 SE2d 32) (1993).

2. Billings further enumerates as error the trial court's admission of his inculpatory statement. Prior to trial, a *Jackson v. Denno* hearing was conducted to determine the voluntariness of Billings' custodial statement. At the hearing, Drennon testified that Billings signed a rights waiver form in his presence prior to questioning and after he verbally acknowledged that he understood those rights. The form delineated his *Miranda* rights, and those rights were read aloud to Billings twice before the statement was given. By signing the form, Billings acknowledged that no promises or threats were made to him and no pressure or coercion of any kind had been used against him. Drennon further testified that Billings appeared to understand all of these communications, and that no coercion, threats, or promises of any kind were utilized to obtain the waiver of rights and statement during the 52-minute interview. It was also established at the hearing that Billings was not under the influence of alcohol or drugs, that he understood English, could read and write, and had an eleventh grade education. The other officer present during the interview appeared at the hearing but did not testify. Billings did not testify and did not present any evidence to rebut the officer's testimony. After the hearing, the trial court found as fact based on the testimony of the officer that Billings had been fully advised of his constitutional rights, that his statement was freely and voluntarily made without hope of benefit or reward, or as a product of duress, and that he was not acting under any mental or physical disabilities which prevented him from under-

standing his rights.

"In ruling that the in-custody statement given by the accused was admissible, the trial court must upon consideration of the totality of the circumstances, be satisfied by a preponderance of the evidence that the statement was freely and voluntarily given, and the court's ruling, including findings as to factual matters and credibility, will not be disturbed on appeal unless clearly erroneous. [Cits.]" *Connerly v. State*, 207 Ga. App. 498, 499 (428 SE2d 408) (1993). See also *Carroll v. State*, 208 Ga. App. 316 (2) (430 SE2d 649) (1993). Although Billings maintains that the incriminating statement was given based upon Drennon's promise to assist him in resolving a problem with his jail cell, the uncontroverted evidence produced at the hearing on his motion for new trial shows that Billings' statement was given *before* the officer offered to facilitate the change of Billings' jail cell in exchange for the specific name of the 15-year-old accomplice. Moreover, any promise made to Billings to facilitate a change in his jail cell "is not a promise or 'hope of benefit' which would taint [Billings'] otherwise voluntary confession. [Cit.]" *Sizemore v. State*, 201 Ga. App. 431, 432 (1) (411 SE2d 505) (1991). Our Supreme Court has " 'construed the "slightest hope of benefit" [contained in OCGA § 24-3-50] as meaning the hope of a lighter sentence. [Cit.]' " Id. Consequently, we find that the trial court did not err in admitting this statement and in denying Billings' motion for new trial on this basis.

3. We reject Billings' assertion that the trial court erred in refusing to allow him to cross-examine an officer who was present when Billings made his incriminating statement but did not testify at the *Jackson v. Denno* hearing. "The right of a thorough and sifting cross-examination shall belong to every party *as to the witnesses called against him.*" (Emphasis supplied.) OCGA § 24-9-64. This witness was not called to testify and did not present any direct testimony against Billings. Cf. *Davis v. State*, 261 Ga. 382 (2) (405 SE2d 648) (1991).

4. In two separate enumerations of error, Billings asserts that the trial court erred in failing to grant his alternative motion to dismiss or disqualify the district attorney's office from the prosecution of this case based upon a conflict of interest and an appearance of impropriety. Beth McFadyen, an assistant district attorney at the time of trial, represented Slappey while employed with the public defender's office and negotiated his guilty plea in December 1992. Billings was also represented by the public defender's office prior to the assignment of outside counsel based upon a conflict of interest.

A conflict of interest warranting the disqualification of a prosecuting attorney "has been held to arise where the prosecutor previously has represented the defendant with respect to the offense charged, or has consulted with the defendant in a professional capac-

ity with regard thereto. . . ." *Williams v. State*, 258 Ga. 305, 314 (369 SE2d 232) (1988). "It would clearly be improper for an attorney to change roles from the prosecution to the defense (and vice versa) in the same case." *Frazier v. State*, 257 Ga. 690, 693 (9) (362 SE2d 351) (1987). While we agree with Billings that an appearance of impropriety exists, other members of the office of the prosecuting attorney were not disqualified from the prosecution of this action. Although Directory Rule 5-105 (D) of the Georgia Code of Professional Responsibility provides that no partner or associate of the firm where an attorney is disqualified from the representation of a client may accept or continue employment with the client based upon a conflict of interest, this "imputed disqualification rule was not meant to encompass governmental law offices. . . . The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice." (Citations and punctuation omitted.) *Frazier v. State*, supra at 694. Vicarious disqualification of a government department is not necessary or wise, and the individual lawyer should be screened from any direct or indirect participation in the matter, and discussion with colleagues concerning the case should be prohibited. Id. In the case at bar, McFadyen testified unequivocally that she did not participate directly or indirectly in the prosecution of this case since joining the office of the district attorney and did not consult with any person in the district attorney's office on this case. Accordingly, the trial court did not err in denying Billings' motion to disqualify. See *Pullen v. State*, 208 Ga. App. 581 (3) (431 SE2d 696) (1993).

5. Next, Billings maintains that the trial court erred in allowing the State to impeach its own witness by the use of prior inconsistent statements based upon the prosecutor's statement in his place that he was surprised by the response of the witness. However, "[a] party may impeach its own witness with a prior inconsistent statement without any showing of entrapment or surprise, [cits.]." *Rollins v. State*, 262 Ga. 698, 699 (1) (425 SE2d 285) (1993). See also *Davis v. State*, 249 Ga. 309 (3) (290 SE2d 273) (1993). While Billings further complains that the trial court allowed the prosecutor to ask leading questions of this witness on direct examination after the witness was impeached, "the trial court has the discretion to allow leading questions on direct examination. . . . It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal." *Fugate v. State*, 263 Ga. 260, 265 (431 SE2d 104) (1993). Under the circumstances, we find no abuse of discretion.

6. Billings further contends that the trial court erred in admitting a photograph of the Shannon's daughter taken a few months prior to the incident in question because the photograph lacked probative value and inflamed the jury. Assuming arguendo that the photograph

was erroneously admitted, it is highly probable that any error in the admission of this evidence did not contribute to the judgment. *Watkins v. State*, 207 Ga. App. 766 (4) (430 SE2d 105) (1993). Moreover, Billings has not shown that this photograph was inflammatory.

7. Next, Billings maintains that the identification mug shots and mug books were unduly prejudicial, improperly placed his character in issue, and were improperly admitted over his objection. We disagree. The mug shots and mug books were introduced by the State for identification purposes and did not suggest that Billings had been the subject of prior arrests or convictions for other offenses. "It is well settled that the mere admission into evidence of a picture of defendant with an identifying number does not indicate that the defendant was guilty of any previous crime and does not place his character in issue." (Citations and punctuation omitted.) *Dorsey v. State*, 183 Ga. App. 409 (1) (359 SE2d 195) (1987). Consequently, a mistrial was not warranted, and the trial court did not err in denying the motion.

8. Lastly, Billings asserts that the trial court erred in failing to require the district attorney to disclose under the authority of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), pending charges against him for a subsequently committed offense. On the contrary, the disclosure of this information is not mandated under *Brady*. "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. Due process does not require that as a matter of constitutional law everything must be disclosed. . . . However, suppression by the prosecution of evidence *favorable to the accused* which is material to either guilt or punishment violates due process." (Citations and punctuation omitted.) (Emphasis supplied.) *Belins v. State*, 210 Ga. App. 259, 260 (435 SE2d 675) (1993). This evidence of which Billings complains was not favorable to his defense of the offenses charged. Accordingly, the trial court did not err in failing to compel the disclosure of this information.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 4, 1994 —
RECONSIDERATION DENIED FEBRUARY 17, 1994 —

*Morris & Webster, J. David Tucker*, for appellant.

*C. Paul Bowden, District Attorney, Gary C. McCorvey, Assistant District Attorney*, for appellee.