A94A1248. MOCLAIRE v. THE STATE.
A94A1249. ENDRES v. THE STATE.
(451 SE2d 68)

JOHNSON, Judge.

The state prosecuted William Moclaire and Troy Endres together on a multiple count indictment charging them with participating in a crime ring involving several law enforcement officers and others. The Fulton County jury found Endres guilty of two counts of armed robbery and Moclaire guilty of two counts of burglary, three counts of armed robbery, two counts of aggravated assault and two counts of possession of a firearm during the commission of a felony. Moclaire and Endres jointly appeal from their convictions.

1. Moclaire and Endres contend the court erred in denying their extraordinary motion for a new trial because the state failed to disclose the results of a prosecution witness' polygraph examination and statements made by the witness after the polygraph in violation of *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). "The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and material either to guilt or punishment. . . . Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. Such evidence is evidence favorable to an accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." (Citations and punctuation omitted.) *Brooks v. State,* 182 Ga. App. 144, 145 (1) (355 SE2d 435) (1987). Contrary to the argument of Moclaire and Endres, the polygraph results and the witness' statements after the polygraph are not exculpatory. Black's Law Dictionary defines exculpatory as clearing or tending to clear from alleged fault or guilt; excusing. *Houston v. State,* 187 Ga. App. 335, 338 (3) (370 SE2d 178) (1988). Here, the polygraph results and witness statements in no way clear or excuse Moclaire and Endres from guilt; rather, the evidence shows simply the probability that the witness, who was indicted along with Moclaire and Endres, committed crimes other than those which he admitted and did not reveal the identities of all the crime-ring participants. This evidence is, at best, non-inculpatory of Moclaire and Endres, whom the witness had previously identified as crime-ring participants, in that it does not again mention them by name. See *Whatley v. State,* 197 Ga. App. 489, 490 (3) (398 SE2d 807) (1990).

Despite their argument to the contrary, Moclaire and Endres could not have used the polygraph results as impeachment evidence because they did not stipulate with the state that the results would be

admissible at trial. "[W]here the defendant and the State did not stipulate that the results of a polygraph test taken by a witness would be admissible at trial, questioning the witness regarding those test results is impermissible because a stipulation is a prerequisite for the admissibility of such evidence." (Citations and punctuation omitted.) *Walker v. State*, 264 Ga. 79, 80 (2) (440 SE2d 637) (1994); *Bragg v. State*, 175 Ga. App. 640, 644 (2) (334 SE2d 184) (1985). Moclaire and Endres have also made no showing as to how the witness is impeached by the statements he made after the polygraph. Any other evidence concerning the unstipulated polygraph test was also nonprobative and inadmissible. See *Allen v. State*, 210 Ga. App. 447, 449 (3) (436 SE2d 559) (1993). Moreover, we find no merit in the appellants' contention that the results of the polygraph examination could have potentially led to the discovery of exculpatory information. See *Jefferson v. State*, 159 Ga. App. 740, 742 (2) (285 SE2d 213) (1981).

Not only have Moclaire and Endres failed to show the polygraph results and witness statements were favorable to them as exculpatory or impeachment evidence, but they have also failed to show the evidence is material to their guilt or sentencing. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation and punctuation omitted.) *Rogers v. State*, 257 Ga. 590, 592 (3) (361 SE2d 814) (1987). " 'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' [Cits.]" *Belins v. State*, 210 Ga. App. 259, 260 (2) (435 SE2d 675) (1993). "[T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." (Citations and punctuation omitted.) *Houston v. State*, supra at 339 (3). Considering the polygraph evidence and witness statements in the context of the entire record, we conclude there is no reasonable probability that the result of the instant proceeding would have been different if the evidence had been given to Moclaire and Endres. Because the omitted evidence does not undermine confidence in the outcome of the trial, the trial court was justified in denying the extraordinary motion for a new trial. See *Cato v. State*, 195 Ga. App. 619, 620 (1) (394 SE2d 413) (1990); *Benefield v. State*, 140 Ga. App. 727, 733-736 (8) (232 SE2d 89) (1976).

2. Moclaire and Endres claim the court erred in refusing to reopen the evidence after both they and the state rested. "It is well settled that the reopening of the evidence is within the sound discretion of the trial court. That decision will not be disturbed absent an

abuse of discretion." (Citations and punctuation omitted.) *Oswell v. State*, 208 Ga. App. 883, 884 (2) (432 SE2d 586) (1993). Moclaire and Endres requested that the court allow them to present an additional witness who purportedly would have corroborated the testimony of a prior witness. The court did not abuse its discretion in refusing to reopen the evidence for testimony which was cumulative of prior evidence and which Moclaire and Endres could have presented in their case-in-chief. See *Brown v. State*, 188 Ga. App. 282, 283 (372 SE2d 838) (1988); *Killens v. State*, 184 Ga. App. 717, 721 (5) (362 SE2d 425) (1987); *Pope v. State*, 178 Ga. App. 148, 149 (1) (342 SE2d 330) (1986).

3. Moclaire and Endres assert the court erred in not allowing them to recall a prosecution witness to cross-examine him about criminal charges pending against him in Cobb County. The federal constitution guarantees the defendant in a criminal trial the specific right to cross-examine a key state witness about criminal charges pending against the witness. *Hines v. State*, 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982). See also *Owens v. State*, 251 Ga. 313, 314-317 (1) (305 SE2d 102) (1983). Assuming, without deciding, that the witness in the instant case was a key prosecution witness and that the court erred in refusing to allow the cross-examination, the error was harmless beyond a reasonable doubt because the strength of the state's case was overwhelming and the witness' testimony merely corroborated other evidence. See *Byrd v. State*, 262 Ga. 426, 427-428 (2) (420 SE2d 748) (1992).

4. Moclaire and Endres argue the court erred in ruling that a newspaper reporter could not be compelled to testify to impeach state witness James Batsel. This argument is without merit.

Batsel's sister purportedly told the reporter about statements Batsel had made concerning the crime ring. Moclaire and Endres attempted to have the sister testify to impeach Batsel, claiming the statements she attributes to Batsel contradict his trial testimony. When Moclaire and Endres were unable to find the sister, they sought to compel the reporter's testimony about what the sister purportedly told the reporter Batsel had said. The trial court refused to compel the testimony, ruling it is protected by the reporter's qualified privilege under OCGA § 24-9-30 and is hearsay.

We note the sister's testimony about any material prior inconsistent statements made by Batsel would not have been hearsay, but would have been admissible both to impeach Batsel and as substantive evidence. See *Sprouse v. State*, 250 Ga. 174, 176 (296 SE2d 584) (1982). Likewise, if the sister had testified and denied telling the reporter about alleged material statements made by Batsel, the reporter's claims to the contrary would have been appropriate to impeach the sister and as substantive evidence. See *Jackson v. State*,

258 Ga. 810, 811 (3) (375 SE2d 454) (1989). Under those circumstances, whether the reporter's information is protected by the qualified privilege of OCGA § 24-9-30 would be a pertinent issue. Under the circumstances of the instant case, however, pretermitting that issue is the trial court's correct ruling that the reporter's proffered testimony is inadmissible hearsay.

"Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). Here, the reporter's proffered testimony does not derive its value solely from the reporter's credibility but rests mainly on the veracity and competency of Batsel's missing sister. Contrary to the claim of Moclaire and Endres in the trial court that they offered the reporter's testimony merely to show that Batsel made the statements to his sister, they actually offered the reporter's testimony for the truth of the matter asserted therein; i.e., to prove that Batsel's sister did in fact tell the reporter about statements allegedly made by Batsel. Because the testimony was offered for the truth of the matter asserted therein, it is inadmissible hearsay. Compare *Gibby v. State*, 213 Ga. App. 20, 22 (2) (b), (c) (443 SE2d 852) (1994). Thus, regardless of whether the reporter's information is privileged, the trial court did not err in disallowing the reporter's testimony.

5. Moclaire and Endres complain the court erred in refusing to allow them to impeach state witness Mark McKenna with testimony from McKenna's attorney regarding communications made to the attorney by McKenna about his involvement in the crime ring. Moclaire and Endres argue the attorney-client privilege is inapplicable to the communications because the attorney discussed them with the media and in another court. "[C]ommunications made by a client to an attorney for the purpose of being imparted by him to others do not fall within the inhibitions of the law that render an attorney as a witness incompetent to testify to statements or disclosures made to him by his client." (Citations and punctuation omitted.) *Shelton v. State*, 206 Ga. App. 579, 580 (426 SE2d 69) (1992). In the instant case, there is no evidence that McKenna made the communications to his attorney for the purpose of having the attorney impart them to others. Compare *Brenneman v. State*, 200 Ga. App. 111, 114 (2) (407 SE2d 93) (1991). The mere fact that the attorney discussed the communications with others, without evidence that McKenna authorized those discussions, does not prove that McKenna waived the attorney-client privilege. "[I]t is axiomatic that the privilege belongs to the client, not the attorney [cit.]." *Peterson v. Baumwell*, 202 Ga. App. 283, 285 (2) (414 SE2d 278) (1991). Because McKenna has not waived the privilege, which was properly invoked by the attorney in this case, the trial court correctly ruled the communications are expressly protected by

the attorney-client privilege and the attorney could not be compelled to testify. See OCGA §§ 24-9-24; 24-9-25; *Womack v. State*, 260 Ga. 305, 306-307 (2) (393 SE2d 232) (1990); *Williams v. State*, 258 Ga. 281, 284-285 (5) (368 SE2d 742) (1988); *Amwest Surety Ins. Co. v. Interstate Constr. Co.*, 212 Ga. App. 590, 592 (442 SE2d 772) (1994).

6. Endres claims the court erred in denying his renewed motion to suppress evidence. The court initially granted Endres' motion to suppress, but when the state indicated it had filed a notice of appeal from the court's ruling, Endres withdrew the motion in order to avoid a delay of his trial. Several days after the withdrawal, Endres' counsel renewed the motion to suppress, claiming he had not received a copy of the state's notice of appeal. The prosecutor contradicted Endres' counsel, stating she had in fact mailed a copy of the notice to him and spoken to Endres' other attorney the day the notice was filed. The court denied Endres' renewed motion to suppress.

Endres asserts the state did not actually file a notice of appeal and thus the prosecutor's averment to the contrary was a misrepresentation that amounts to prosecutorial misconduct because it goaded Endres into withdrawing his motion to suppress. "A charge of prosecutorial misconduct is a serious charge and is not to be lightly made; having raised it, appellant has the duty to prove it by the record and by legal authority." *Meredith v. State*, 211 Ga. App. 213, 215 (4) (438 SE2d 644) (1993). The only evidence Endres cites in support of his assertion that the state did not file a notice of appeal is the page of the transcript at which his counsel states he did not receive a copy of the notice from the state and a portion of the record which does not contain the notice of appeal. This evidence is not dispositive as to whether the state actually filed a notice of appeal, especially in light of the prosecutor's statement in her place to the trial court that the state did file the notice. Because it is unclear from the record before us whether the state filed a notice of appeal, Endres has not met his burden of proving by the record that the prosecutor made a misrepresentation of fact. See *Carroll v. State*, 208 Ga. App. 316, 318 (3) (430 SE2d 649) (1993).

Moreover, even if we assume the prosecutor was mistaken in stating that a notice of appeal had actually been filed, Endres has not shown the prosecutor intended the misstatement to goad him into withdrawing the motion to suppress. "The standard is the intent of the prosecutor in connection with the misconduct. . . . Intent is a question of fact for the court to resolve. . . . [T]he facts must warrant the conclusion that there was such an instigative intention." (Citations and punctuation omitted.) *Williams v. State*, 207 Ga. App. 124, 125 (427 SE2d 59) (1993). The trial court in this case heard the prosecutor's explanation regarding the state's intention to appeal from the grant of Endres' motion to suppress and obviously found

that the prosecutor had no instigative intention to goad Endres into withdrawing his motion to suppress. Because Endres has failed to prove that the prosecutor's statement rises to the level of prosecutorial misconduct, we will not disturb the court's finding.

7. Moclaire and Endres contend the court erred in admitting several pieces of irrelevant evidence. "Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant. Furthermore, the admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." (Citations and punctuation omitted.) *Moss v. State*, 206 Ga. App. 310 (1) (425 SE2d 386) (1992). Here, the court admitted a copy of Moclaire's birth certificate from New Jersey. The state claims the birth certificate is relevant to the issue of Moclaire's identification as a crime-ring participant because there was testimony that one of the participants had a New Jersey accent. Although the relevance of the birth certificate is doubtful, we cannot say the court abused its discretion in admitting it. "Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors." (Citations and punctuation omitted.) *Jones v. State*, 202 Ga. App. 642, 644 (5) (415 SE2d 64) (1992).

Nor did the court abuse its discretion in admitting a photograph of items belonging to an unindicted co-conspirator and items seized from other co-conspirators. Those items may not have been used by Moclaire or Endres, but they were identified as instrumentalities used in crimes in which the appellants were implicated. The items were therefore relevant to show that the crimes did in fact occur and to demonstrate how they were perpetrated. See *Moss v. State*, supra. "Further, applying the high probability test of *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869), we find that even if error had occurred it would have been harmless." *Watkins v. State*, 207 Ga. App. 766, 772 (4) (430 SE2d 105) (1993).

8. Moclaire claims the court erred in giving him consecutive sentences for his possession of a firearm during the commission of a felony and armed robbery convictions. He argues those two offenses merge because they involve the same firearm. This argument has previously been decided adversely to Moclaire. See *Wiley v. State*, 250 Ga. 343, 351-352 (6) (296 SE2d 714) (1982); *Kennedy v. State*, 195 Ga. App. 795 (1) (395 SE2d 270) (1990).

*Judgment affirmed. Beasley, P. J., and Andrews, J., concur.*

DECIDED NOVEMBER 3, 1994 — RECONSIDERATION DISMISSED
NOVEMBER 17, 1994 AND RECONSIDERATION DENIED
NOVEMBER 29, 1994 — 

Steven H. Sadow, Robert G. Fierer, Colette B. Resnik, for appellants.
Lewis R. Slaton, District Attorney, Barry I. Mortge, Shawn E. Lagrua, Alfred D. Dixon, Assistant District Attorneys, for appellee.